POLSINELLI SHUGHART, PC
Brett D. Anders
Jason A. Nagi
7 Penn Plaza, Suite 600
New York, New York 10001
banders@polsinelli.com
jnagi@polsinelli.com
(212) 684-0199
*Attorneys for Plaintiff*

**CV12-0164**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**NO SUMMONS ISSUED**



| | |
|---|---|
| WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF WATERFALL VICTORIA MORTGAGE TRUST 2011-SBC2 MORTGAGE-BACKED CERTIFICATES, SERIES 2011-SBC2, | |
| Plaintiff, | Civil Action No.: |
| -against- | **COMPLAINT** BROOKLYN OFFICE |
| 107-04 JAMAICA AVE. CORP., a New York corporation, and KUMAL CHETRAM, an adult individual, | GARAUFIS, J. |
| Defendants. | REYES, M.J |

Plaintiff Wells Fargo Bank, N.A., as trustee for the registered holders of Waterfall

Victoria Mortgage Trust 2011-SBC2 Mortgage-Backed Certificates, Series 2011-SBC2

("**Plaintiff**" or "**Lender**"), by and through its attorneys, for its Complaint against defendants

107-04 Jamaica Ave. Corp., a New York corporation, and Kumal Chetram, an adult individual,

(collectively, the "**Defendants**"), states as follows:

### *The Parties*

1.       Plaintiff is a national banking association organized and existing under the laws of

the United States of America, acting as trustee for a trust that has elected to be treated as a real

estate mortgage investment conduit under the Internal Revenue Code of 1986.  Plaintiff is a

citizen of the State of South Dakota, with its principal place of business at 101 N. Phillips

Avenue, Sioux Falls, South Dakota 57104.

2.    Defendant 107-04 Jamaica Ave. Corp. ("**Borrower**") is a New York corporation

and a citizen of the State of New York, with its principal place of business at 107-04 Jamaica

Avenue Richmond Hill, New York 11418.

3.    Defendant Kumal Chetram, an adult individual ("**Chetram**"), is domiciled in

New York, New York and is a citizen of the State of New York, with his primary residence at

450 Northend Avenue 24F, New York, New York 10285.

### *Jurisdiction and Venue*

4.    Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction because

the parties are citizens of different states and the amount in controversy exceeds the sum of

$75,000.00.

5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a).

### *The Loan Transaction*

6.    Borrower signed and delivered to Greystone Bank, a corporation organized and

existing under and by virtue of the laws of the State of North Carolina ("**Greystone**"), that

certain Mortgage Note (the "**Note**"), dated August 29, 2007, in the original principal amount of

$577,000.00 (the "**Loan**").  A true and correct copy of the Note is attached hereto as **Exhibit A**.

7.    The indebtedness owed under the Note is secured by Borrower's real property,

and improvements thereon, with a street address of 107-04 Jamaica Avenue, Richmond Hill,

New York 11418, and personal property located on or relating to such real property, and all

appurtenances thereto (collectively, the "**Property**"), as evidenced by a certain Mortgage dated

August 29, 2007 (the "**Mortgage**"), signed by Borrower and delivered for the benefit of

2

Greystone and Mortgage Electronic Registration Systems, Inc. ("**MERS**"), acting solely as a nominee for Greystone and Greystone's successors and assigns, and for purposes of recording the Mortgage.

8.     The Mortgage was duly recorded in the Office of the City Register of the City of New York, Queens County, on October 9, 2007 as City Register File Number 2007000511550, and the New York State recording tax was duly paid thereon. A true and correct copy of the Mortgage is attached hereto as **Exhibit B**, and the Property is legally described on Schedule A attached thereto.

9.     Borrower signed and delivered to Greystone that certain Assignment of Lessor's Interest in Leases (the "**ALR**"), dated August 29, 2007, pursuant to which Borrower absolutely and unconditionally assigned and transferred all right, title and interest in and to all leases and rental agreements arising out of or relating to the Property, including all rents, income, and profits from the Property.

10.     The ALR was duly recorded in the Office of the City Register of the City of New York, Queens County, on October 9, 2007, as City Register File No. 2007000511551. A true and correct copy of the ALR is attached hereto as **Exhibit C**.

11.     On or about October 9, 2007, MERS assigned the Mortgage, together with the underlying notes and the obligations described therein, to Greystone pursuant to that certain Assignment of Mortgage dated October 9, 2007 (the "**MERS Assignment**").

12.     The MERS Assignment was duly recorded in the Office of the City Register of the City of New York, Queens County, on July 2, 2009, as City Register File No. 2009000202180. A true and correct copy of the MERS Assignment is attached hereto as **Exhibit D**.

3

13.     The Note, the Mortgage, the ALR, and all other documents further evidencing,

securing or executed in connection with the debt owned under the Note, all of which are referred

to herein collectively as the "**Loan Documents**" were assigned by Greystone to Lender pursuant

to that certain Assignment of Mortgage and that certain Assignment, each dated December 10,

2010 (collectively, the "**Assignments**").

14.     The Assignments were duly recorded in the Office of the City Register of the City

of New York, Queens County, on November 25, 2011 as City Register File Numbers

2011000411650 and 2011000411651 respectively. True and correct copies of the Assignments

are attached hereto as **Exhibit E** and **Exhibit F** respectively.

15.     Plaintiff is the current holder and owner of the Loan Documents.

### *Default Under the Loan Documents*

16.     The Loan Documents provide, among other things:

(a)     that the total indebtedness shall become due and payable at the option of

Plaintiff after the occurrence of any default, including the payment of any

installment of principal and interest and escrow payments for insurance,

taxes, utilities, assessments and deposits;

(b)     in any action to foreclose, Plaintiff shall be entitled to the appointment of a

receiver without notice or regard to value;

(c)     Borrower will pay a late charge on any installment when paid more than

15 days after the due date thereof;

(d)     Plaintiff shall be entitled to legal expenses, costs and fees; and

(e)     in the event of a default by the Borrower, interest at the default rate set

forth in the Note shall be owed by the Borrower.

4

17.     Borrower has failed to make certain payments due and owing under the Loan Documents and is therefore in default.

18.     By letter dated April 26, 2011, counsel for Plaintiff notified Borrower of its default (the "**Default Notice Letter**") under the Loan Documents for Borrower's failure to make timely payment in the amounts as and when called for under the Note and other Loan Documents for the months of March and April 2011, and demand was made for cure of the same. A true and correct copy of the Default Notice Letter sent to Borrower is attached hereto as **Exhibit G**.

19.     By letter dated June 23, 2011, counsel for Plaintiff notified Borrower of its continued default under the Loan Documents and provided notice to Borrower that the indebtedness owed under the Note had been accelerated (the "**Acceleration Letter**"). A true and correct copy of the Acceleration Letter sent to Borrower is attached hereto as **Exhibit H**.

### *Amounts Due Under the Loan Documents*

20.     As of December 16, 2011, the following amounts are due and owing to Plaintiff under the Loan Documents:

(a)     Principal in the amount of $557,423.31;

(b)     Interest accrued through December 16, 2011 in the amount of $34,320.24;

(c)     Interest at the per diem rate of $120.00 from December 17, 2011 and thereafter;

(d)     Default interest accrued through December 16, 2011 in the amount of $20,907.87;

(e)     Default interest at the per diem rate of $77.42 from December 17, 2011 and thereafter;

(f)     Any and all fees and costs incurred by Plaintiff, both to date and hereafter, in connection with the collection of the amounts due and owing under the Loan Documents or the protection, preservation and realization of the Property, including processing fees, late charges, expenses, administrative fees, attorneys fees, and costs incurred in connection with the issuance of the third-party reports in connection with the Property; and

(g)     Prepayment consideration and any other amounts due and owing under the Loan Documents.

### *Right to Possession and Rents*

21.     Under Section 38 of the Mortgage, upon Borrower's default, Plaintiff is entitled to immediate possession of the Property and may collect and make use of rents, profits, and income from the Property.

22.     In addition, under Section 6 of the ALR, the license granted to Borrower for use of the rents automatically terminated upon an event of default under the Loan Documents.

23.     Plaintiff is entitled to an order directing all rents, issues, proceeds, revenues, profits, and income from the Property be remitted to Plaintiff in accordance with the terms of the Mortgage and directing that any such amounts be used to reduce the indebtedness described above.

### *Right to Foreclosure*

24.     Under the Mortgage, upon an event of default, Plaintiff has the right to institute a proceeding for foreclosure. Thus, Plaintiff is entitled to an Order from the Court that the Mortgage be foreclosed, that the liens provided therein be declared as first and prior liens on the Property and that Plaintiff be granted immediate possession of the Property.

25.    No other action has been brought to recover any part of the debt under the Mortgage, Note, or other Loan Documents.

26.    The Defendants herein have or claim to have some interest in, or lien upon the Property or some part thereof, which interest or lien, if any, has accrued subsequently to the lien of the Mortgage, and is subject and subordinate thereto.

27.    Plaintiff may not be deemed to have waived, altered, released, or changed its election to foreclose by reason of any payment made after the date of commencement of this action of any and all of the defaults identified herein.

28.    Plaintiff specifically reserves the right to pursue a temporary injunction, appointment of receiver or other relief with respect to its rights under the Loan Documents. Pursuant to N.Y. Real Prop. Acts. Law §1371, Plaintiff will move the Court to enter final judgment against Borrower for any residue of the debt under the Note remaining unsatisfied after the foreclosure sale of the Property is completed.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff for foreclosure of the Property as follows:

A.    Finding that Plaintiff has a first and best lien on the Property;

B.    Ordering that Plaintiff has the legal right and is authorized to foreclose on the Property:

    (i)    in one parcel according to law together with the fixtures and articles of personalty upon the premises;

    (ii)   subject to zoning restrictions and ordinances adopted by any municipality or other governmental authority, and violations thereof;

    (iii)  subject to any state of facts that an accurate survey would show;

    (iv)     subject to covenants and restrictions of record, if any; and

    (v)     subject to violations, if any, noted by any federal, state, city, town or village agency having authority over the premises;

C.    Finding that such foreclosure will vest in the purchaser thereat free and clear title to the Property, free of any and all interests that are or might be asserted by the Defendants to this Complaint;

D.    Ordering that Plaintiff has the right to credit bid at such foreclosure sale any and all amounts due to Plaintiff under the Note;

E.    Ordering and directing that the Sheriff of Queens County, New York, or any referee appointed in this action, foreclose the Property and deliver title via a Sheriff's Deed or Referee's Deed, and bill of sale, as appropriate, to the successful bidder at such foreclosure;

F.    Ordering and directing that the proceeds of the sale be applied as follows:

    (i)     to payment of the expenses of the sale;

    (ii)     to the payment of the debt owed to Plaintiff under the Note;

    (iii)     to the payment of foreclosure costs and other accrued costs in connection with the foreclosure;

    (iv)     to the payment, at Plaintiff's option, of any real property taxes that may be due and unpaid in connection with the Property;

    (v)     to the payment, at Plaintiff's option, of all other assessments against or attributable to the Property; and

(vi)      the surplus, if any, to the payment of debts secured by junior liens on the Property and then, to Borrower, in accordance with further order of the Court;

G.      Ordering that Borrower has no right of redemption or reinstatement with respect to the Property;

H.      Finding that Plaintiff has preserved its rights to pursue any deficiency that may exist under the Note after application of the proceeds of the foreclosure sale pursuant to N.Y. Real Prop. Acts. Law §1371 and may move the Court to enter final judgment against Borrower for such deficiency; and

I.      Ordering all further relief is just, proper, and equitable.

Dated: January 12, 2012
        New York, New York

                             POLSINELLI SHUGHART, PC

                             By: _____
                                 BRETT D. ANDERS
                                 JASON A. NAGI
                                 7 Penn Plaza, Suite 600
                                 New York, New York 10001
                                 banders@polsinelli.com
                                 jnagi@polsinelli.com
                                 (212) 684-0199

                                 Attorneys for Plaintiff
                                 WELLS FARGO BANK, N.A., AS
                                 TRUSTEE FOR THE REGISTERED
                                 HOLDERS OF WATERFALL VICTORIA
                                 MORTGAGE TRUST 2011-SBC2
                                 MORTGAGE-BACKED CERTIFICATES,
                                 SERIES 2011-SBC2

## MORTGAGE NOTE

Loan #: 00000000005006

$ 577,000.00                                       Date: August 29, 2007

Dated at: College Point, New York

FOR VALUE RECEIVED, **Kumal Chetram** residing at: 107-04 Jamaica Ave, Richmond Hill, NY 11418 **and 107-04 Jamaica Ave. Corp.,** a Corporation with an address of 107-04 Jamaica Avenue, Richmond Hill, NY 11418 (the "Maker"), promises to pay to the order of GREYSTONE BANK (the "Lender"), a corporation organized and existing under and by virtue of the laws of the State NC, in immediately available funds and in lawful money of the United States, at c/o Loancare Servicing Center Inc PO Box 8068, Virginia Beach, VA 23462 or such other place as the holder hereof may from time to time designate in writing, the sum of **$577,000.00** which is now exists or may hereafter be reduced is referred to below as the "Principal Sum" or the "Loan", together with interest thereon as hereinafter provided for, as follows:

(i) if the Note is signed on any day other than the first day of the month, a payment on the day of signing of interest only to the last day of the month at the initial interest Rate specified below in the next subparagraph ("Short Term Interest");

(ii) commencing on **October 1, 2007** and on the first day of each and every month thereafter up to and including the "Maturity Date", as defined below, the sum of **$4,133.70**, each of such payments to be applied by the Lender first to the payment of accrued interest on the Principal Sum, at a rate of **7.75%** per annum (the "Interest Rate"), and the balance to the reduction of the Principal Sum;

(iii) the unpaid Principal Sum, together with all accrued and unpaid interest thereon as provided in this Note, and all other sums due and payable under the Note and Mortgage, on **September 1, 2037** (the "Maturity Date"), or on such earlier date, upon acceleration, in the event of a default hereunder or otherwise.

With the exception of Short Term Interest, all interest on the Loan shall be calculated on a factor based on a 360 day year and a thirty (30) day month and will be applied to the outstanding principal balance, provided that any monthly payment of principal and interest that is received before its due date shall not be credited until its due date and any full or partial prepayment, if permitted, shall not be applied until the first day of the next month following the month of payment and Maker shall not receive interest on any funds while being held by Lender prior to crediting same nor shall Maker be entitled to any interest on the amount prepaid. Short Term Interest shall be calculated on a factor based on the actual number of days elapsed divided by 365 (366 days in a leap year).

If any payment of principal or interest becomes due on a day on which banks in the City and State of New York or County of Queens are required or permitted by law to remain closed, such payment shall be made on the next succeeding Business Day. Any such extension of time shall be included in computing interest in connection with such payment.

**AND THE MAKER FURTHER HEREBY EXPRESSLY AGREES WITH THE LENDER AS FOLLOWS:**

1.      In the event that any payment shall become overdue for a period of 15 days, a late charge of $0.05 per $1.00 due of the total monthly payment of principal, interest and escrow so overdue may be charged by the Lender for the purpose of defraying the expense incident to handling such delinquent payment.

2.      Lender may charge and Maker agrees to pay reasonable fees and costs for the services of Lender and its agents in processing any ownership transfer on its records, fire loss payments, checks returned dishonored or unpaid, substitution of obligors, releases, modifications, extensions, consents, special agreements, assignments, reduction certificates and certificates of mortgage.

3. The Maker may not us... e proceeds of the Principal Sum or L...  for personal, household or family purpose.

4. Any interest due under this Note which shall be outstanding more than 15 days beyond the due date thereof, or any unpaid charges due or any advances made by Lender out of its own funds for charges or taxes and any unpaid interest charges thereon from an earlier month shall bear interest at the interest rate provided in the Mortgage until paid or up to and including judgment of foreclosure. Nothing in this paragraph shall operate or be construed to prevent Lender from exercising its default rights under the Mortgage. This paragraph shall not be effective if the principal balance of this loan on the date of this instrument is less than $250,000.00 or if the property securing this mortgage is a 1-2 family owner-occupied house.

5. This Note is secured by, inter alia, a mortgage made by the Maker to the Lender of even date herewith, on real property (the "Premises") known **107-04 Jamaica Avenue Richmond Hill, New York 11418** located in Queens County, State of **New York** as more particularly described in said mortgage (the "Mortgage") and by an assignment by the Maker to the Lender of any and all leases affecting the Premises or any part thereof.

6. The whole of the Principal Sum or any part thereof, and of any other sums of money secured by the Mortgage shall, forthwith or thereafter, at the option of the Lender, become due and payable if default be made in any payment under this Note, or upon the happening of any default which, by the terms of the Mortgage or any other instrument, document or agreement now or hereafter given to secure this Note (the Mortgage and all such other instruments, documents and agreements, being collectively, the "Loan Documents"), including any grace period set forth therein, shall entitle the Lender to declare the same, or any part thereof, to be due and payable; and all of the covenants, agreements, terms and conditions of the Loan Documents are hereby incorporated in this Note with the same force and effect as if herein set forth at length.

7. If more than one person joins in the execution of this Note, the obligation shall be joint and several and the relative words herein shall be read as if written in the plural or if any be of the feminine sex, in the feminine gender, as the case may be.

8. Presentment for payment, notice of dishonor, protest, and notice of protest are hereby waived by the Maker and by each endorser and guarantor of this Note.

9. Any check, draft, money order or other instrument given in payment of all or any portion of this Note may be accepted by the Lender and handled in collection in the customary manner, but the same shall not constitute payment hereunder or diminish any rights of the Lender, except to the extent actual cash proceeds of such instruments are unconditionally received by the Lender and applied to the indebtedness in the manner provided in this Note.

10. This Note may not be changed or modified orally, but only by an instrument in writing signed by the party against whom such change or modification is sought to be enforced.

11. After any stated or accelerated maturity hereof, the Loan shall bear interest, payable on demand, at the default rate (the "Default Rate") set forth in the mortgage of even date herewith given by Maker to the Lender, but in no event more than the highest rate permitted by the applicable usury law in respect of the Maker, until the unpaid balance of principal and interest shall have been paid in full. Notwithstanding anything to the contrary contained herein, the Lender shall be entitled to interest at the Default Rate (i) in the event of a default by the Maker under the mortgage or this Note, from the time of said default to the sale of the premises following foreclosure, (ii) on any deficiency judgment (iii) and from the stated Maturity Date of this Note.

This paragraph does not create any right on Maker's part to pay interest at the rate designated by Lender for the period following stated or accelerated maturity instead of making payment in full.

The Lender or any subsequent ___ .er of this Note shall also be entitled to ( 've interest at the highest rate allowed by law on any claim filed by it pursuant to the United States Bankruptcy Code, as amended, to recover all or part of the amounts that may be due under this Note.

12. In the event that this Note is placed in the hands of an attorney for collection by reason of any default hereunder, or if a foreclosure action is commenced or if Lender is required to defend its rights hereunder or under the Mortgage or any documents executed in connection herewith, the Maker agrees to pay the Lender's reasonable attorneys' fees and expenses and all court costs of such actions and foreclosure actions.

13. This Note is and shall be deemed to have been made and delivered in the State of New York and in all respects shall be governed and construed in accordance with the laws of that State.

14. The Maker of this Note hereby irrevocably and unconditionally:

(a) consent to the jurisdiction of the courts of the State of New York in any actions, suits, or proceedings arising out of or in connection with this Note (although this covenant shall not preclude an action on this Note by the Lender in any other appropriate jurisdiction);

(b) waive any objection which the Maker may now or hereafter have to the laying of venue of any of the aforesaid actions, suits, or proceedings arising out of or in connection with this Note or the Loan Documents brought in any of the aforesaid courts;

(c) waive the right to plead or claim that any such action suit, or proceeding brought in any such court has been brought in an inconvenient forum;

(d) waive the requirements of personal service in connection with any actions, suits, or proceedings arising out of or in connection with this Note or any of the Loan Documents, and consent that all service of process may be made by certified mail, return receipt requested, addressed to the Maker at the address of the Maker set forth below, or at such address, for the Maker, as the Maker shall give to the Lender by written notice sent by certified mail, return receipt requested. Service so being deemed completed two (2) days after the same has been posted as aforesaid; and

(e) waive the right, in litigation in which it and the Lender are adverse parties, to trial by jury and the right to assert any set-off or counterclaim of any nature or description.

15. The word "Maker" shall include the Maker's representatives, successors and assigns and the word "Lender" shall include the Lender's representatives, successors and assigns.

16. All notices or other communications required to be given pursuant to this Note shall be in writing and be deemed given, on the second business day following the deposit of such written notice or communication enclosed in a prepaid wrapper, certified mail, return receipt requested, in a post office or official depository under the care and custody of the United States Postal Service, properly addressed to the party to whom such notice or communication is addressed at the address set forth in the Mortgage of even date herewith given by Maker to the Lender or at such other address as either party may from time to time furnish to the other in the manner provided for notice hereof (for the purposes of such change of address notice, such notice shall be deemed completed only when actually received by the party to which it is addressed).

17. The provisions of this Note are severable. If any clause or provision shall be held invalid or unenforceable, in whole or in part, then such invalidity or unenforceability shall affect only such clause or provision, or part thereof, and shall not in any manner affect any other clause or provision in this Note.

18. No modification or waiver of or with respect to any provision of this Note, or consent by the Lender to any departure by the Maker from any of the terms or conditions hereof, shall, in any event, be effective unless it shall be in writing and executed by the Lender. Such waiver or consent shall, in any event, be effective only in the

specific instance and for the purp ___ for which it was given. No notice to or ⟨    and on the Maker in any case shall, of itself, entitle the Maker to any other or further notice or demand in similar or other circumstances.

19.   No failure or delay by the Lender in exercising any right, power or privilege under this Note shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise of any such right, power or privilege.

20.   Each and every right granted to the Lender under this Note, and under all other agreements, documents or instruments executed by the Maker and delivered pursuant to or in connection with this Note which evidence or secure the indebtedness described herein or any other obligation of the Maker to the Lender arising as set forth therein, shall be cumulative and may be exercised by the Lender from time to time.

21.   This Note, the Loan Documents and all other agreements, documents and instruments executed by the Maker and delivered pursuant to or in connection with this Note which evidence or secure the indebtedness described herein or any other obligation of the Maker to the Lender arising as set forth therein, contain the entire agreement between the Maker and the Lender relating to the subject matter hereof and thereof. The Maker expressly acknowledges that the Lender has not made and the Maker is not relying on any oral representations, agreements or commitments of the Lender or any officer, employee, agent or representative thereof.

IN PRESENCE OF: _____

_____
Kumal Chetram

107-04 Jamaica Ave, Corp.

By: _____
            Kumal Chetram, President

State of New York)
                                    ss.:
County of Queens)

On the 29th day August, 2007 before me, the undersigned, a Notary Public in and for said State, personally appeared **Kumal Chetram**   personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

JAIME JORDAN
Notary Public, State of New York
No. 01JO6079109
Qualified in Queens County
Commission Expires August 12, 20 10

_____
Notary Public

## PREPAYMENT NOTE RIDER

This Prepayment Note Addendum is made this 29th day of August, 2007 and is incorporated into and shall be deemed to amend and supplement the Note of the same date (the "Note") made by the undersigned (the "Borrower") to evidence indebtedness to **GREYSTONE BANK** (the "Lender"), which debt is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") of the same date and covering the property described in the Security Instrument and located at: **107-04 Jamaica Avenue Richmond Hill, New York 11418 (the "Property")**.

**Additional Covenants.** Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender covenant, and agree, that the provisions of the section of the Note entitled "BORROWER'S RIGHT TO PREPAY" are amended to read as follows:

Subject to the Prepayment fee provided below, I have the right to make payment of the entire unpaid Principal at any time before it is due. A "Prepayment" is the prepayment of the entire unpaid Principal due under the Note. A payment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

**The Mortgage Loan may be prepaid in whole, but not in part, at any time, provided that the Borrower shall pay to the Lender a prepayment fee equal to:**

    (i)    during loan years one to five, five percent (5%)of the then outstanding principal balance of the Mortgage Loan;

    (ii)    during the sixth loan year, four percent (4%) of the then outstanding principal balance of the Mortgage Loan;

    (iii)    during the seventh loan year, four percent (4%) of the then outstanding principal balance of the Mortgage Loan;

    (iv)    during the eighth loan year, three percent (3%) of the then outstanding principal balance of the Mortgage Loan;

    (v)    during the ninth loan year, two percent (2%) of the then outstanding principal balance of the Mortgage Loan;

    (vi)    during the tenth loan year, one percent (1%) of the then outstanding principal balance of the Mortgage Loan; and

    (vii)    during the eleventh loan year, and each loan year thereafter, the Mortgage Loan may be prepaid in whole, but not in part, at any time with a prepayment fee of zero precent (0%).

The Note Holder will apply all Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.

If I make a Partial Prepayment, there will be no change in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If my Note is an Adjustable Rate Note, Partial Prepayments may reduce the amount of my monthly payment after the first interest rate Change Date following the Partial Prepayment. However, any reduction due to my Partial Prepayment may be offset by an interest rate increase.

The Note Holder's failure to collect a Prepayment fee at the time a Prepayment is received shall not be deemed a waiver of such fee. Any Prepayment fee not collected at the time the Prepayment is received shall be payable on demand.

All other provisions of the Note are unchanged and remain in full force and effect.

Prepymt Note Rider FIXED                          Page 1 of 2

**NOTICE TO BORROWER**

Do not sign this Addendum before you read it. This Addendum provides for the payment of a Prepayment fee if you wish to repay the loan prior to the date provided for repayment in the Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED:

_____ 8/24/07          _____ 8/29/07 _____
Kumal Chetram          Date                        Date

107-04 Jamaica Ave, Corp,
By: _____
        Kumal Chetram, President

Prepymt Note Rider FIXED                    Page 2 of 2

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.



2007091600027001001E956C

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 23 |
|---|---|---|
| Document ID: 2007091600027001 | Document Date: 08-29-2007 | Preparation Date: 09-17-2007 |
| Document Type: MORTGAGE | | |
| Document Page Count: 22 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| RAM ABSTRACT LTD | GREYSTONE BANK |
| AS AGENT OF UNITED GENERAL (RUGT5280)Q | 4700 FALLS OF NEUSE ROAD, SUITE 190 |
| 102-34 JAMAICA AVENUE | RALEIGH, NC 27609 |
| RICHMOND HILL, NY 11418 | |
| 718-846-7800 | |
| PICK UP NIMA | |

**PROPERTY DATA**

| Borough | Block Lot | Unit | Address |
|---|---|---|---|
| QUEENS | 9297 79 | Entire Lot | 107-04 JAMAICA AVENUE |
| | Property Type: 1-3 FAMILY WITH STORE / OFFICE | | |

**CROSS REFERENCE DATA**

CRFN_____  or  Document ID____ ___ ___  or  ___ Year_____ Reel____ Page ___  or File Number____ ___

**PARTIES**

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| 107-04 JAMAICA AVE. CORP. | MORTGAGE ELECTRONIC REGISTRATION |
| 107-04 JAMAICA AVENUE | SYSTEMS, INC. |
| RICHMOND HILL, NY 11418 | P.O. BOX 2026 |
| | FLINT, MI 48501-2026 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 577,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 577,000.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 2,885.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 6,491.25 | | $ | 0.00 |
| Spec (Additional): | $ | 1,442.50 | RECORDED OR FILED IN THE OFFICE | | |
| TASF: | $ | 0.00 | OF THE CITY REGISTER OF THE | | |
| MTA: | $ | 1,731.00 | CITY OF NEW YORK | | |
| NYCTA: | $ | 3,606.25 | Recorded/Filed 10-09-2007 16:31 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 16,156.00 | 2007000511550 | | |
| Recording Fee: | $ | 147.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

*City Register Official Signature*

<table>
<tr><td colspan="3">

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

</td><td colspan="3">



2007091600027001001E956C

</td></tr>
</table>

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 23 |
|---|---|---|
| Document ID: 2007091600027001 | Document Date: 08-29-2007 | Preparation Date: 09-17-2007 |

Document Type: MORTGAGE
Document Page Count: 22

| PRESENTER: | RETURN TO: |
|---|---|
| RAM ABSTRACT LTD<br>AS AGENT OF UNITED GENERAL (RUGT5280)Q<br>102-34 JAMAICA AVENUE<br>RICHMOND HILL, NY 11418<br>718-846-7800<br>PICK UP NIMA | GREYSTONE BANK<br>4700 FALLS OF NEUSE ROAD, SUITE 190<br>RALEIGH, NC 27609 |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 9297 | 79 | Entire Lot | 107-04 JAMAICA AVENUE |

Property Type: 1-3 FAMILY WITH STORE / OFFICE

**CROSS REFERENCE DATA**

| CRFN | _or_ Document ID | _or_ | Year | Reel | Page | _or_ File Number |
|---|---|---|---|---|---|---|

**PARTIES**

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| 107-04 JAMAICA AVE. CORP.<br>107-04 JAMAICA AVENUE<br>RICHMOND HILL, NY 11418 | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.<br>P.O. BOX 2026<br>FLINT, MI 48501-2026 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 577,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 577,000.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 2,885.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 6,491.25 | | $ | 0.00 |
| Spec (Additional): | $ | 1,442.50 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 1,731.00 | | | |
| NYCTA: | $ | 3,606.25 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 16,156.00 | | | |
| Recording Fee: | $ | 147.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

Loan. #: 00000000005006     Mers #: 100612600000000484

B : 9297
L · 79

**MORTGAGE**
**Between**
**GREYSTONE BANK**
**and**
**107-04 Jamaica Ave. Corp.**

**RAM ABSTRACT LTD.**
102-34 Jamaica Avenue
Richmond Hill, NY 11418
718-846-7800

  THIS MORTGAGE made this 29th day of August, 2007 by **107-04 Jamaica Ave. Corp.** (a Corporation, organized under the laws of the state of New York, with an address at 107-04 Jamaica Avenue, Richmond Hill, NY 11418) (the "Mortgagor"), for the benefit of **GREYSTONE BANK**, a corporation or association organized under the laws of the State of NC, with an address at 4700 Falls of Neuse Rd, Ste 190 Raleigh, NC 27609(the "Mortgagee").

  **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**

  WITNESSETH, that the Mortgagor is indebted to the Mortgagee for the payment of an indebtedness in the principal sum of **Five Hundred Seventy Seven Thousand and 00/100 ($577,000.00)** lawful money of the United States, to be paid, with interest thereon (as such sum may be reduced from time to time, together with the interest thereon, hereinafter sometimes collectively referred to and described as the "Debt"), according to a certain note or obligation bearing even date herewith (the "Note").

  NOW THIS INDENTURE WITNESSETH that for better securing the payment of the Debt, and the performance by the Mortgagor of the terms, covenants and conditions contained herein, in the Note and in any other documents and agreements given to secure payment of the Note according to the true intent and meaning thereof, and also for and in consideration of one dollar to the Mortgagor in hand paid by the Mortgagee at or before the sealing and delivery of these presents the receipt whereof is hereby acknowledged, the Mortgagor has mortgaged, granted, bargained, sold, alienated, released, conveyed and confirmed, and by these presents does mortgage, grant, bargain, sell, alien, release, convey and confirm unto the Mortgagee, forever, and grants the Mortgagee a security interest in:

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

  (A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

  (B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

  (C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A)    to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and
(B)    to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

## MORTGAGED PROPERTY

A.  All the land located in the County of Queens and State of New York described in Schedule A annexed hereto and made a part hereof (the "Land"), and known by the following street address:

### 107-04 Jamaica Avenue Richmond Hill New York 11418

B.  All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land (the "Improvements").

C.  All fixtures, machinery, appliances, materials, equipment furniture and personal property of every nature whatsoever now or hereafter owned by the Mortgagor and located in or on, or attached to, or used, or intended to be used, in connection with the operation of, or with construction on, the Land or the Improvements, including all extensions, additions, improvements, betterments, renewals and replacements to any of the foregoing and all of the right, title and interest of the Mortgagor in and to any such personal property or fixtures together with the benefit of any deposits or payments now or hereafter made by the Mortgagor or on its behalf with regard thereto (the "Personal Property").

D.  All right, title and interest of the Mortgagor, if any, in and to the land in the bed of the streets or highways abutting the Land to the center line thereof; all easements, rights of way, strips and gores of land, streets, ways, sidewalks, curbs, alleys, passages, sewer rights, waters, water courses, water rights and powers, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments, remainders, reversions and appurtenances whatsoever, in any way belonging, relating or appertaining to the Land or the Improvements, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by the Mortgagor (the "Appurtenances").

E.  All leases, licenses (including, without limitation, the cash and securities deposited there under), rents, issues and profits of the property described above in Paragraphs (A), (B), (C) and (D) (the "Rents") and all the estate, right, title, interest, property, possession, claim and demand whatsoever, at law as well as in equity, of the Mortgagor of, in and to, and all proceeds of any sales or other dispositions of, the property described in Paragraphs (A), (B), (C) and (D) above and this Paragraph (E).

F.  All proceeds of and any unearned premiums on any insurance policies covering the Improvements or the Personal Property or the Rents including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof.

G.  All awards ("Awards"), heretofore made and hereafter to be made by any municipal, state or federal authorities to the Mortgagor and all subsequent owners of the property described above in Paragraphs (A) through (E) including any awards for any changes of grade of streets affecting the property described above in Paragraphs (A) through (E) as the result of the exercise of the power of eminent domain (a "Taking").

H.  All the other estate, right, title, interest, use, possession, property, claim and demand whatsoever, contract rights, general intangibles, actions and rights in action, relating to the property described above in

- 2 -

Paragraphs (A) through (G) and proceeds, products, replacements, additions, substitutions, renewals and accessions of any of the foregoing.

All the property, interests and rights referred to in Paragraphs (A) through (H) above and any additional property, interests or rights hereafter acquired by the Mortgagor and subject to the lien of this Mortgage or intended to be so are referred to in this Mortgage as the "Mortgaged Property".

TO HAVE AND TO HOLD the Mortgaged Property to the Mortgagee, its successors and assigns, forever.

The Mortgagor hereby grants to the Mortgagee a security interest in all rights and property described above in Paragraphs (A) through Paragraph (H). This Agreement is a self-operative Security Agreement with respect to such rights and property, but the Mortgagor agrees to execute and deliver on demand such other instruments as the Mortgagee may request in order to perfect its security interest or to impose the lien hereof more specifically upon any of such rights and property. The Mortgagee shall have all the rights and remedies under this Mortgage, or under any applicable law or agreements with the Mortgagor, of a Secured Party under the Uniform Commercial Code in addition to those specified herein, including the right to sign the Mortgagor's name to record or continue UCC financing statements required to be periodically filed or renewed.

And the Mortgagor covenants, represents and warrants with the Mortgagee that:

## COVENANTS, REPRESENTATIONS AND WARRANTIES

1. The Mortgagor will pay the Debt as provided in the Note.

2. The Mortgagor shall (at its expense in so far as is applicable by the context):

    (a)  maintain the Improvements in good and substantial order and repair and in such fashion that the value and utility of the Mortgaged Property will not be diminished and will make or cause to be made all necessary and appropriate repairs, replacements, and renewals thereof, whether interior or exterior, structural or non-structural. All repairs, replacements and renewals shall be at least in quality and class equal to that of the original Improvements;

    (b)  not use or cause the whole or any part of the Mortgaged Property to be used in such a manner as to cause the same to be subject to forfeiture under applicable laws. In the event that any person or entity, in possession of the whole or any part of the Mortgaged Property, or otherwise, may, by acts or omissions, cause the Mortgaged Property to be subject to forfeiture, the Mortgagor, within five (5) days after receiving notice of the occurrence of any such act or omission, shall notify the Mortgagee of the occurrence of such act or omission and shall commence such legal proceedings against the party committing or permitting the acts or omissions as shall be necessary to prevent such forfeiture;

    (c)  comply, or cause to be complied with, with all laws, statutes, codes, acts, ordinances, orders, judgments, decrees, injunctions, rules, regulations, permits, licenses, authorization, directions and requirements of all governments, departments, commissions, boards, courts, authorities, agencies officials and officers which may, as at the date of this Mortgage or thereafter, affect the Mortgaged Property or any part thereof or its use or condition, or which may affect any adjoining sidewalks, curbs, vaults and vault space if any, or streets or ways in so far as the Mortgagor is required to comply therewith;

    (d)  comply or cause to be complied with all requirements of the issuer of any policy(s) of insurance covering or affecting the whole or any part of the Mortgaged Property, and all orders, rules, regulations and other requirements of the New York Board of Title Underwriters (or that of any other body exercising similar functions) applicable to the Mortgaged Property or any part thereof; and

- 3 -

(e) not do or permit any act or thing which is contrary to the requirements or prohibitions of any document of record affecting the Mortgaged Property nor commit or permit any waste of or any nuisance in, at or on the Mortgaged Property or any part thereof.

3. None of the Improvements or any part or portion thereof, and none of the Personal Property or any part or portion thereof, shall be removed, altered or demolished without the prior written consent of the Mortgagee in each instance, provided, however, that the Mortgagor shall have the right, without the consent of the Mortgagee, to remove and dispose of, free from the lien of this Mortgage, such Personal Property as from time to time may become worn out or obsolete, provided that, simultaneously with or prior to such removal, any such Personal Property shall be replaced with Personal Property of like kind and value at least equal to that of the replaced Personal Property and free from any title retention, security interest or other encumbrance.

4. The Mortgagor will pay when due all liens of any kind, taxes of any kind and nature (including real and personal property taxes and income, franchise, withholding, profits and gross receipts taxes), assessments, water and sewer charges, rents and rates, and other governmental or municipal charges, fines or impositions relating to the Mortgaged Property or any part thereof, or upon the rents, revenues, income or profits of the Mortgaged Property, or arising in respect of the occupancy, use or possession of the whole or any part thereof, and the Mortgagor will promptly deliver official receipts therefore to the Mortgagee.

5. The Mortgagor will, at the option of Mortgagee, pay to Mortgagee on the first day of each calendar month one-twelfth of an amount (the "Escrow Fund") which would be sufficient to pay the Taxes payable, or estimated by Mortgagee to be payable, during the ensuing twelve (12) months. The Mortgagee's authority to collect and hold and require Mortgagor to make payments on account of the Taxes as provided herein shall include Mortgagee's authority to collect and hold and require Mortgagor to make payments to establish cushions and to repay shortages and deficiencies and for other purposes. Mortgagee will apply the Escrow Fund to the payment of Taxes which are required to be paid by Mortgagor pursuant to the provisions of this Mortgage. If the Escrow Fund is not sufficient to pay the taxes, as the same become payable, Mortgagor shall pay to Mortgagee, upon demand, the amount which mortgagee shall estimate as sufficient to make up the deficiency. Until expended or applied as above provided, any amounts in the Escrow Fund shall constitute additional security for the Debt and shall not bear interest, unless Mortgagee is required by law to pay interest on amounts in the Escrow Fund.

6. The Mortgagor will not claim any deduction from the taxable value of the Mortgaged Property by reason of this Mortgage nor shall the Mortgagor claim or be entitled to any credit against the principal and interest due and owing under the Note and this Mortgage for any taxes, assessments, water rates or other governmental or municipal charges, bonds or impositions paid by the Mortgagor relating to the Mortgaged Property.

7. In the event of the passage after the date of this Mortgage of any law of the state wherein the Mortgaged Property is located deducting from the value of land for the purposes of taxation any lien thereon, or changing in any way the laws for the taxation of mortgages or debts secured by mortgages for state or local purposes, or the manner of the collection of any such taxes so as to affect this Mortgage, or the Debt, the Mortgagee shall have the right to give thirty (30) days written notice to the owner of the Mortgaged Property requiring the payment of the Debt, and if such notice be given, the Debt shall become due, payable and collectible at the expiration of said thirty (30) days. Unless prohibited by applicable law, any notice given pursuant to this Paragraph requiring the payment of the Debt shall provide an option to the Mortgagor, in lieu of such acceleration, to either pay to the Mortgagee an amount or amounts equal to any and all sums payable by the Mortgagee as taxes or otherwise by reason of such laws including taxes, if any, payable on the amounts so paid to the Mortgagee or, in the alternative, pay the Debt in full. If the notice as provided above be given, the payment of said sums described in the preceding sentence or the Debt, as may be the case, shall become due, payable and collectible at the expiration of the thirty (30) day period referred to above.

8.1 If at any time the United States of America, any state thereof or any governmental subdivision of any such state, shall require (i) revenue or other stamps to be affixed to the Note or this Mortgage, or (ii) the payment of any taxes or fees on this Mortgage, or the Note or in connection with the recording of this Mortgage or any

- 4 -

amendment, extension or modification hereof, the Mortgagor will pay the same, with interest and penalties thereon, if any. The Mortgagee shall have the right, but not the obligation, to make any such payments on behalf of the Mortgagor. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note and shall be paid by the Mortgagor to the Mortgagee, upon demand, together with interest at the Default Rate, as defined herein.

8.2   For the purpose of this Mortgage "Default Rate" means a rate equal to 5.0% per annum in excess of the interest rate then in effect with respect to the loan, but in no event higher than the maximum rate permitted by the applicable usury law to be charged by this Mortgagee.

9.   The Mortgagor represents and warrants that it is the fee simple owner of the Mortgaged Property free of defects, liens, and encumbrances of any nature other than those exceptions to title as set forth in the certificate of title to the Mortgaged Property issued by RAM Abstract under commitment number RUGT5280 and re-dated as at the date of this Mortgage. The Mortgagor warrants that this Mortgage is and will be maintained as a valid first lien on the Mortgaged Property, subject only to the above-mentioned exceptions and will defend the same against the claims of all persons whomsoever. At the Mortgagor's sole cost and expense, the Mortgagor forthwith upon the execution and delivery of this Mortgage, and thereafter from time to time, will cause this Mortgage, and any security instrument creating or evidencing the lien or security interest hereof upon the Mortgaged Property and each instrument of further assurance, to be filed, registered or recorded in such manner and in such places as may be required by any present or future law to publish notice of and fully to protect the lien hereof upon, and the lien of the Mortgagee in, the Mortgaged Property.

10.   (a) The Mortgagee shall have the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of the Mortgagor, which the Mortgagee, in its sole discretion, believes should be brought to protect its interest in or the title to the Mortgaged Property. The Mortgagee may take such action by attorneys selected by the Mortgagee.

(b)   If any action or proceeding be commenced, whether adversary or not (including an action to foreclose this Mortgage or to collect the Debt), to which action or proceeding the Mortgagee is made or becomes a party, or in which it becomes necessary to defend, uphold or enforce the lien of this Mortgage, the Mortgagee may prosecute, defend or participate in such action or proceeding by attorneys selected by the Mortgagee.

(c)   All sums paid by the Mortgagee for the expense of any such action or proceeding, including foreclosure proceedings, described in this Paragraph (including reasonable counsel fees and expenses) shall be paid by the Mortgagor to the Mortgagee, upon demand, together with the interest thereon at the Default Rate. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.

(d)   In any action or proceeding to foreclose this Mortgage, or to recover or collect the Debt, the provisions of law respecting the recovery of costs, disbursements and allowances shall also be applicable.

11.   (a)   The Mortgagor, until the Debt secured by this Mortgage shall be fully paid and satisfied, shall keep the Improvements and the Personal Property insured, by a company or companies and by a policy or policies, in form and substance, to be approved by the Mortgagee, against:

(i)   loss or damage by perils customarily included under standard "all risk" policies, and all other contingencies as may be required by the Mortgagee, in an amount to be approved by the Mortgagee not exceeding in the aggregate one hundred per cent of their full insurable value (the "Required Coverage"), so that the Mortgagor will not be deemed a co-insurer under any such policy;

- 5 -

(ii) if the Mortgaged Property is now located in an area having special flood hazards or if such area hereafter shall be designated by the United States Government, or any agency thereof, as having special flood hazards, a policy insuring against floods in an amount equal to the lesser of (A) the principal amount secured by this Mortgage or (B) the maximum amount available pursuant to federal law; and

(iii) insurance against such other hazards (including war damage insurance, if and when the same is available from the United States Government or any agency or subdivision thereof) as may be reasonably required by the Mortgagee from time to time and as are customarily insured against with respect to like properties.

(b) At the time of the execution of this Mortgage and at least twenty (20) days prior to the expiration of each policy required to be provided by the Mortgagor pursuant to the provisions of this Paragraph, the Mortgagor shall deliver to the Mortgagee the policy or policies or the renewal policy or policies, as the case may be, with appropriate evidence of the payment of the premium therefor.

(c) The insurance policies required to be procured pursuant to this Mortgage shall:

(i) as to hazard insurance coverage, contain a standard non-contributory form of mortgagee clause satisfactory to the Mortgagee, naming the Mortgagee, its successors and assigns, as an insured in such capacity, and providing that no act, omission or negligence of the Mortgagor, or its agents, servants or employees, or of any tenant under any lease for the whole or any part of the Mortgaged Property, which might otherwise result in a forfeiture of such insurance or any part thereof, shall in any way affect the validity or enforceability of such insurance insofar as the Mortgagee is concerned.

(ii) as to all other coverage name the Mortgagor and the Mortgagee, as named insureds, as their respective interests may appear,

(iii) provide, to the extent obtainable, that such policies may not be cancelled or amended without at least thirty (30) days' prior written notice to the Mortgagee, and

(iv) include effective waivers by the insurer of all rights of subrogation against the named insured.

(d) The Mortgagor, at its expense, will furnish to the Mortgagee, within ninety (90) days after demand (but not more frequently than once in each consecutive period of twenty-four (24) calendar months) proof of the then full insurable value of the Improvements and the Personal Property, such proof to be by appraisals satisfactory in form and substance to the Mortgagee and prepared by an appraiser (who may be an appraiser for the insurance company insuring such property) designated and paid for by the Mortgagor and approved by the Mortgagee. No failure or omission on the part of the Mortgagee to request any such appraisals or proof shall relieve the Mortgagor of any of its obligations under this Paragraph.

(e) Until the full payment of the Debt, the Mortgagee shall have and hold the insurance policies described in this Paragraph as collateral and further security for the payment of the Debt. Upon default of the Mortgagor's compliance with this Paragraph (i) the Mortgagor hereby agrees to indemnify and hold the Mortgagee harmless against all damage, loss or liability resulting from all risks for which such insurance should have been effected or maintained and (ii) the Mortgagee or its successors or assigns may, but shall have no obligation to, place such insurance as described above, from time to time, in an amount in the aggregate not exceeding the Required Coverage, for the purpose aforesaid, and pay the premium or premiums therefor. In the event of such payment, the Mortgagor will pay to the Mortgagee, its successors or assigns such premium or premiums so paid by the Mortgagee, upon demand, together with the interest thereon at the Default Rate. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, title or interest in, to or on or claim upon the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage and shall be deemed to be secured by this Mortgage and evidenced by the Note. In addition, in the

- 6 -

event of a default of such payment by the Mortgagor or of the delivery of policies as provided above in this Paragraph, the Debt shall, at the option of the Mortgagee, its successors or assigns, immediately become due and payable.

(f)  Mortgagor hereby grants authority to Mortgagee to endorse all loss drafts in the name of the Mortgagor signing Mortgagor's name for that purpose.  Mortgagor will deliver all loss drafts to Mortgagee within ten (10) days of receipt thereof.  All insurers are authorized to make loss drafts payable to Mortgagee only.  All such proceeds shall be applied at the option of the Mortgagee to any outstanding interest or other moneys due under the Mortgage or to principal which shall be subject to the prepayment clause in all respects or to Mortgagor for expenses actually incurred and paid by Mortgagor in the restoration of the improvements.

(g)  The insurance required pursuant to this Paragraph may be effected by a policy of blanket insurance which may cover property in addition to the Mortgaged Property, provided that the coverage shall be the same as if the Mortgaged Property were the sole property insured and the Mortgagor shall deliver to the Mortgagee a duplicate original copy or copies thereof or original insurance certificates therefor.

(h)  The Mortgagee reserves the right to require the Mortgagor, at any time during the term of this Mortgage, to pay to Mortgagee on the first day of each calendar month one-twelfth of an amount (the "Escrow Fund") which would be sufficient to pay the insurance premiums payable, or estimated by Mortgagee to be payable, during the ensuing twelve (12) months.  The Mortgagee's authority to collect and hold and require Mortgagor to make payments on account of the insurance premiums as provided herein shall include Mortgagee's authority to collect and hold and require Mortgagor to make payments to establish cushions and to repay shortages and deficiencies and for other purposes.  Mortgagee will apply the Escrow Fund to the payment of the insurance premiums which are required to be paid by Mortgagor pursuant to the provisions of this Mortgage.  If the Escrow Fund is not sufficient to pay the insurance premiums, as the same become payable, Mortgagor shall pay to Mortgagee, upon demand, the amount which Mortgagee shall estimate as sufficient to make up the deficiency.  Until expended or applied as above provided, any amounts in the Escrow Fund shall constitute additional security for the Debt and shall not bear interest, unless Mortgagee is required by law to pay interest on amounts in the Escrow Fund.

12.  The Mortgagor shall give the Mortgagee prompt notice of any damage or destruction by fire or casualty occurring on the Mortgaged Property, as well as of any condemnation or eminent domain proceedings affecting the same.

13.1 The Mortgagor will not enter into any agreement for a Taking of the Mortgaged Property, or any part thereof, without the prior written consent of the Mortgagee.

13.2  In the event the whole or any part of the Mortgaged Property shall be the subject of a Taking, or shall be voluntarily conveyed in lieu thereof prior to the payment in full of the Debt, the Mortgagor shall pay to the Mortgagee, during the period from the date of a Taking or conveyance in lieu thereof, to the payment in full of the Debt, the difference, if any, between the interest payable thereon at the rate stipulated in the Note in respect of the Debt and the interest actually paid to the Mortgagor by the entity exercising the power of eminent domain or to whom the Mortgaged Property was conveyed in lieu of the exercise of such power.

14.1  All Awards are hereby assigned to the Mortgagee. The Mortgagee and its legal representatives, successors and assigns (at its or their option) are hereby irrevocably authorized and empowered to collect and receive the Awards from the authorities making the same, to give proper receipts and acquittances therefor in any of their names or in the name of the Mortgagor, and to apply the same toward the payment of the Debt, the Note or this Mortgage, in such priority and proportions as the Mortgagee in its discretion shall deem proper, although the Debt secured by this Mortgage then may not be due and payable. If the Mortgaged Property is sold, through foreclosure or otherwise, prior to the receipt by the Mortgagee of any Awards, the Mortgagee shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive any Awards, or a portion thereof sufficient to pay the Debt, whichever is less.

14.2 Notwithstanding any Taking, the Mortgagor shall continue to pay the Debt at the time and in the manner provided for in the Note and in this Mortgage and the Debt shall not be reduced until any Awards shall have been actually received and applied by the Mortgagee to the discharge of the Debt. The Mortgagor shall file and prosecute its claim or claims for any Awards in good faith and with due diligence and cause the same to be collected and paid over to the Mortgagee. The Mortgagor, further, hereby irrevocably appoints the Mortgagee and its officers and employees the attorney-in-fact of the Mortgagor, coupled with an interest, to file, prosecute, settle, and compromise its claims for any Awards, to receive any Awards and to endorse any instruments with respect thereto. The Mortgagor further agrees that although it is hereby expressly agreed that the same shall not be necessary in any event, the Mortgagor shall, upon demand, of the Mortgagee, make, execute and deliver to it any and all assignments and other instruments sufficient for the purpose of assigning any Awards to the Mortgagee, free, clear and discharged of any encumbrances of any kind or nature whatsoever.

15. The Mortgagor within four (4) days upon request in person or within ten (10) days upon request by mail will furnish a written statement, duly acknowledged, of the amount due on the Debt and this Mortgage and whether any offsets and defenses exist against the Debt.

16.1 The Mortgagor shall furnish to the Mortgagee such financial data or information as the Mortgagee may reasonably request from time to time.

16.2 The Mortgagor will keep adequate records and books of account in accordance with generally accepted accounting principles consistently applied and will permit the Mortgagee, by its agents, accountants and attorneys, to visit and inspect the Premises and examine Mortgagor's records and books of account and to discuss its affairs, finances and accounts with the officers of the Mortgagor, at such reasonable times as may be requested by the Mortgagee.

17. The Mortgagor shall not, without the prior consent in writing of the Mortgagee, voluntarily sell, transfer, or convey its interest in the Mortgaged Property or any part thereof in or by any one or series of transactions or permit the Mortgaged Property or any part thereof or any interest therein to be sold, transferred, or conveyed. For the purposes of this Paragraph, a "sale" shall include: dissolution, sale of stock and/or sale of assets of the Mortgagor, conveyance or sale by the present ownership to any other persons or parties resulting in a material change in the identity or control of the present shareholders, officers and/or directors of the Mortgagor or conversion to a form different than the legal entity or equitable ownership of the Mortgaged Property without the prior written consent of the Mortgagee. Consent to one such transaction shall not be deemed to be a waiver of the right to require such consent to further or successive transactions.

18. The Mortgagor shall not, without first obtaining the prior written consent of the Mortgagee in each such instance:

(a) mortgage, convey or grant a lien subordinate to this Mortgage on the Mortgaged Property, or on any or all of the Land, Improvements, Personal Property or Appurtenances of which it is comprised; or

(b) grant a security interest subordinate to the lien and security interest of this Mortgage on the Mortgaged Property; or

(c) assign the rents of the Mortgaged Property.

Consent to one such transaction shall not be deemed to be a waiver of the right to require such consent to future or successive transactions.

19. The Mortgagor shall discharge of record, by the filing of a bond pursuant to court order or otherwise, any mechanic's or materialmen's lien or a judgment lien filed against the Mortgaged Property, within thirty (30) days after the filing thereof.

- 8 -

20. The Mortgagor shall not execute or file or record any instrument which imposes a restriction upon the sale or occupancy of the Mortgaged Property on the basis of race, sex, religion, national origin, color or creed. Upon any violation of this undertaking, the Mortgagee may, at its option, declare the unpaid balance of the Debt to be immediately due and payable.

21. The Mortgagor will, if other than a natural person, do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges as a business or stock corporation, partnership, trust or other entity under the laws of the jurisdiction of its formation or incorporation and will comply with all regulations, rules, ordinances, laws, statutes, orders and decrees of any governmental authority applicable to it or to the Mortgaged Property, or any part thereof. If the Mortgagor herein is a corporation, then the Mortgagor represents that the execution of this Mortgage has been duly authorized by the Board of Directors of the Mortgagor and this Mortgage is made in the regular and ordinary course of business. If the Mortgagor herein is a partnership or joint venture, then the Mortgagor represents that all of its general partners, and, to the extent required by law and its organizational documents, its limited partners, if any, have authorized the execution of this Mortgage and this Mortgage is made in the regular and ordinary course of business.

22. Nothing herein or in the Note, and none of the terms, covenants or conditions hereof or thereof shall impose or shall be deemed to impose upon the Mortgagor an obligation to make any payment, pay any interest or late charges in excess of, or do any act or take any action, or forbear from doing any act or taking any action, in violation of any statute, rule, ordinance or regulation in effect and effective as of the date of such payment, act, action or forbearance. In no event shall the Mortgagor be required to make any such illegal or impermissible payment or to take or do any such illegal or impermissible act or forbear from so doing or so taking nor shall any such failure so to pay or act or such forbearance be deemed a default hereunder. If the provisions of this Mortgage would at any time otherwise require payment by the Mortgagor to the Mortgagee of an amount of interest in excess of the maximum amount then permitted by law, the interest payments to the Mortgagee shall be reduced to the extent necessary so that the Mortgagee shall not receive interest in excess of such maximum amount. To the extent that, pursuant to the foregoing sentence, the Mortgagee shall receive interest payments hereunder in an amount less than the amount otherwise provided, such deficit (the "Interest Deficit") will accumulate and will be carried forward (without interest) until the Debt is paid in full. Interest otherwise payable to the Mortgagee hereunder for any subsequent period shall be increased by the maximum amount of the Interest Deficit that may be so added without causing the Mortgagee to receive interest in excess of the maximum amount then permitted by law. The terms, covenants and conditions hereof or of the Note requiring any such illegal or impermissible payment, act, action or forbearance on the part of the Mortgagor to be made or taken are deemed amended, modified or altered in such a manner as to bring all and each of them into conformity with the applicable statutes, rules, ordinances or regulations in respect of the Mortgagor and the Mortgagor hereby covenants and agrees to abide by, conform to and comply with any and all such terms, covenants and conditions as so amended, modified or altered.

23. In addition to the Note, this Mortgage is intended to secure and provide for the payment and performance of any and all obligations now due and owing or which may hereafter be or become due or owing by the Mortgagor to the Mortgagee, however the maximum amount secured by this Mortgage at execution or which under any contingency may be secured hereby at any time in the future shall not exceed in the aggregate the sum of (i) the stated principal amount of this Mortgage, (ii) interest, and (iii) all other amounts advanced by the Mortgagee and secured by this Mortgage in accordance with the terms hereof for the protection of the Mortgaged Property or the preservation of the lien of this Mortgage or both. The obligation of the Mortgagee to make further or future advances or re-advances shall be at the sole discretion of the Mortgagee.

24. Pursuant to Section 291-f of the Real Property Law of the State of New York, neither the Mortgagor nor any tenant of the Mortgaged Property or the Improvements or any part of either shall have the right or power, as against the Mortgagee without its consent, to cancel, abridge or otherwise modify tenancies, subtenancies, leases or subleases now or hereafter in effect in respect of all or any part of the Mortgaged Property or the Improvements or to accept or make, as the case may be, prepayments of installments of rent to become due thereunder. The Rents of the Mortgaged Property are hereby transferred and assigned to the Mortgagee as further security for the payment of the Debt, and the Mortgagee shall have the right to enter upon the Mortgaged

- 9 -

Property for the purpose of collecting the same and to let and operate the Mortgaged Property or any part thereof and to apply the Rents, issues and profits, either in whole or in part, as the Mortgagee elects, to the payment of all charges and expenses of the Mortgaged Property or in reduction of any part of the Debt or other sums due or to become due under the Note or this Mortgage. This assignment and grant shall continue in effect until the Debt and all other obligations secured by this Mortgage are paid. The Mortgagee hereby waives the right to enter upon the Mortgaged Property for the purpose of collecting the Rents and the Mortgagor shall have a license to collect and receive the Rents until default hereunder, but such license of the Mortgagor may be revoked by the Mortgagee upon any such default. The Mortgagee may apply all Rents or any part thereof so received hereunder, after the payment of all of its expenses including costs and attorneys' fees, to the Debt in such manner as it elects or at its option the entire amount or any part thereof so received may be released to the Mortgagor.

25. Nothing herein contained shall be construed as depriving the Mortgagee of any right or advantage available under Section 254 or 271 of the Real Property Law of the State of New York or any other similar, applicable law of the state in which the Mortgaged Property is located, but all covenants herein differing therefrom shall be construed as conferring additional and not substitute rights and advantages, except that the provisions of this Mortgage shall supersede the provisions of subdivision 4 of said Section 254.

26. The Mortgagee and its agents shall have the right to enter and inspect the Mortgaged Property at all reasonable times upon reasonable notice.

27. This Mortgage may not be changed or modified orally, but only by an agreement in writing and signed by the party against whom enforcement of any waiver, change, modification or discharge is sought. THE MORTGAGOR ACKNOWLEDGES DELIVERY TO IT, WITHOUT CHARGE THEREFOR, OF A COPY HEREOF AND OF THE NOTE.

28. This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to constitute but one and the same instrument.

29. If any term, covenant or condition of this Mortgage shall be held to be invalid, illegal or unenforceable in any respect, this Mortgage shall be construed without such provision.

30. If the Mortgagor consists of more than one person or entity, the obligations and liabilities of each such person or entity hereunder shall be joint and several. The relative words herein of single or plural number, or masculine or feminine or neuter gender shall be read as if written in the single or plural, or in the male, neuter or female gender, as the context and as the case may be.

31. The covenants, agreements and options herein contained shall bind and inure to the benefit of the heirs, distributees, executors, administrators, successors and assigns of the parties hereto but the foregoing provisions of this Paragraph shall not constitute a waiver of the provisions of Paragraphs 16 and 17 above.

32. If the Mortgagor shall well and truly pay to the Mortgagee the Debt at the time and in the manner provided in the Note and this Mortgage and shall well and truly abide by and comply with each and every covenant and condition set forth in this Mortgage and in the Note, then these presents and the estate hereby granted shall cease, determine and be void.

## DEFAULTS

33. The Debt shall become due and payable, at the option of the Mortgagee, upon the occurrence of any of the following events:

(a) after default in the payment of any installment of principal or interest as provided in the Note,

(b) after default in payment and reimbursement of the Mortgagee, after demand, for any costs, expenses, and fees advanced or incurred by the Mortgagee in curing any default or failure of the Mortgagor under this Mortgage,

(c) if any warranty, representation or certification made herein or in any financial statement furnished pursuant hereto or in connection with the loan evidenced by the Note shall be materially false,

(d) after default in keeping the Mortgaged Property insured as herein provided,

(e) after default after notice and demand either in assigning and delivering the policies insuring the Improvements or the Personal Property against loss as hereinafter provided for or in reimbursing the Mortgagee for premiums paid on such insurance, as hereinabove provided for,

(f) after default upon request in furnishing a statement of the amount due on this Mortgage and whether any offsets or defenses exist against the Debt, as hereinabove provided for,

(g) upon the actual or threatened alteration, demolition or removal of any of the Improvements erected or to be erected upon the Mortgaged Property or of the Personal Property,

(h) if the Mortgagor does or permits to be done anything that may in any way impair the lien of this Mortgage or impair the value of the Mortgaged Property or any of the Improvements or weaken or diminish the security intended to be given under and by virtue of this Mortgage,

(i) upon the failure of the Mortgagor to perform or comply with any other covenant, agreement or condition of this Mortgage, the Note or any other agreement between the Mortgagor and the Mortgagee in accordance with the terms hereof and thereof;

(j) after failure to pay on or before the date when due, any taxes of any kind and nature, assessments, water and sewer charges, rents and rates, and other governmental or municipal charges, fines or impositions relating to the Mortgaged Property or any part thereof;

(k) after failure for thirty (30) days to exhibit to the Mortgagee receipted bills for any tax, water rate or assessment herein referred to, or

(l) if the Mortgagee shall give the written notice specified above in Paragraph 6.

34. The Debt shall, forthwith, become immediately due and payable upon no further action by Mortgagee due upon the occurrence of any of the following events:
The Mortgagor or any guarantor of the payment of the Note and/or of this Mortgage shall:

(a) call a meeting of or make an assignment for the benefit of creditors,

(b) file a petition in bankruptcy, or be adjudicated insolvent or bankrupt,

(c) suffer an order for relief under any federal bankruptcy law, or petition or apply to any tribunal for the appointment of a receiver or a trustee for it or a substantial part of its assets,

(d) commence any proceedings under any bankruptcy, reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect,

(e) have filed against it a petition, application or proceeding described above in subdivision (d) or such a petition, application or proceeding shall have been commenced against it, which remains undismissed or unstayed for a period of thirty (30) days or more,

- 11 -

(f)  by any act or omission indicate its consent to, approval of or acquiescence in any petition, application or proceeding described above in subdivision (d) or in the appointment of a custodian, receiver or any trustee for it or any substantial part of any of its property,

(g)  suffer any such custodianship, receivership or trusteeship to continue undischarged for a period of thirty (30) days or more,

(h)  conceal, remove or permit to be concealed or removed, any part of its property, with intent to hinder, delay or defraud its creditors or any of them,

(i)  make or suffer a transfer of any of its property which may be fraudulent under any bankruptcy, fraudulent conveyance or similar law,

(j)  make any transfer of its property to or for the benefit of a creditor at a time when other creditors similarly situated have not been paid,

(k)  shall suffer or permit, while insolvent, any creditor to obtain a lien upon any of its property through legal proceedings or distraint which is not vacated within thirty (30) days from the date thereof, or

(l)  generally not pay its debts as such debts become due.

35.  Upon the occurrence of any default hereunder, the Note and all other sums secured hereby shall bear interest at the Default Rate.

36.  Any check, draft, money order or other instrument given in payment of all or any portion of the Note or pursuant to this Mortgage may be accepted by the Mortgagee and handled in collection in the customary manner, but the same shall not constitute payment hereunder or diminish any rights of the Mortgagee, except to the extent that actual cash proceeds of such instrument are unconditionally received by the Mortgagee and applied as the case may be to the Debt in the manner provided in the Note or to the sum due under this Mortgage.

37.  In the event that any payment shall become overdue for a period in excess of 15 days, a "late charge" of five cents ($0.05), or such lesser amount as may be permitted by law in respect of the Mortgagor, for each dollar so overdue may be charged by the Mortgagee for the purpose of defraying the expenses incident to handling such delinquent payment.

## REMEDIES

38.  The Mortgagee, in any action to foreclose this Mortgage, shall be entitled to the appointment of a receiver, without regard to the solvency or insolvency of any person or entity obligated for the payment of the Debt or the adequacy of any security for the Debt and without notice, and notice of such appointment is hereby expressly waived. The Mortgagee or any receiver shall be entitled to take possession of the Mortgaged Property from the owner, tenants and/or occupants of the whole or any part thereof and to collect and receive the Rents and the value of the use and occupation of the Mortgaged Property, or any part thereof, from the then owner, tenants and/or occupants thereof for the benefit of the Mortgagee. The Mortgagor will pay monthly in advance to the Mortgagee or to any receiver appointed to collect the Rents the fair and reasonable rental value for the use and occupation of the Mortgaged Property, or of such part thereof as may be in the possession of the Mortgagor, and upon default in any such payment the Mortgagor will vacate and surrender the possession of the Mortgaged Property to the Mortgagee or such receiver.

39.  In case of a sale in foreclosure, the Mortgaged Property, or so much thereof as may be affected by this Mortgage, may be sold in one or more parcels or interests and in such order as the Mortgagee shall

determine in its sole discretion. The Mortgagor waives and releases any right to have the Mortgaged Property marshalled.

40.  In the event of a foreclosure of this Mortgage or the succession by the Mortgagee to the interests of the Mortgagor hereunder, the purchaser of the Mortgaged Property or such successor shall succeed to all rights of the Mortgagor, including any right to proceeds of insurance and to unearned premiums, and in and to all policies or certificates of insurance assigned and delivered to the Mortgagee pursuant to this Mortgage.

41.  If the Mortgagor shall fail to perform or comply with any covenant, representation, warranty, agreement or condition of this Mortgage, the Mortgagee shall have the right, but not the obligation, to perform and comply with any such covenant, representation, warranty, agreement or condition. The cost thereof paid by the Mortgagee together with all costs, expenses and disbursements shall be paid by the Mortgagor to the Mortgagee, upon demand, together with the interest thereon at the Default Rate. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.

42.  The Mortgagee may be the purchaser of the whole or any part of the Mortgaged Property or of any interest therein at any sale of the Mortgaged Property whether pursuant to foreclosure or power of sale or otherwise hereunder and may apply upon the purchase price any sum the payment of which is secured by this Mortgage. The Mortgagee, upon any such purchase, shall acquire good title to the properties so purchased free of the lien of this Mortgage and free of all equities and rights of redemption in the Mortgagor.

43.  The obligation of this Mortgage and of the Note shall continue until the Debt is paid in full notwithstanding any action or actions or partial foreclosure which may be brought to recover any amount or amounts for installments of principal, interest, taxes, assessments, water rates or insurance premiums or other sums or charges due and payable under the provisions of this Mortgage.

44.  The Mortgagor hereby waives the right to a trial by jury, the right to claim any offset and to assert a counterclaim in any action or proceeding in which the Mortgagor and the Mortgagee are parties brought by the Mortgagee to enforce its rights hereunder.

45.  Any assignee of this Mortgage and the Note shall take the same free and clear of all offsets, counterclaims and defenses of any nature whatsoever which the Mortgagor may have against any assignor of this Mortgage and the Note and no such offset, counterclaim or defense shall be interposed or asserted by the Mortgagor in any action or proceeding brought by any such assignee upon this Mortgage and/or the Note and any such right to interpose or assert any such offset, counterclaim or defense in any such action or proceeding is hereby expressly waived by the Mortgagor.

46.  The Mortgagor shall not be relieved of the Mortgagor's obligation to pay the Debt at the time and in the manner provided for in the Note and this Mortgage by reason of (i) failure of the Mortgagee to comply with any request of the Mortgagor to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note or of any other mortgage, instrument or document evidencing, securing or guaranteeing payment of the Debt or any portion thereof, (ii) the release, regardless of consideration, of the whole or any part of the Mortgaged Property or any other security for the Debt, or (iii) the extension or modification of this Mortgage or any other mortgage, instrument or document evidencing, or securing payment of the Note and/or of this Mortgage or any portion thereof, without first having obtained the consent of the Mortgagor, and in the last event, the Mortgagor shall continue to be obligated to pay the Debt at the time and in the manner provided in the Note and this Mortgage, as so extended or modified, unless expressly released and discharged by the Mortgagee. Regardless of consideration, and without the necessity for any notice to or consent by the holder of any subordinate lien, encumbrance, right, title or interest in or to the Mortgaged Property, the Mortgagee may release any person at any time liable for the payment of the Debt or any portion thereof and may extend the time of payment or otherwise modify the terms of the Note and/or this Mortgage, including, without limitation, a modification of the interest rate payable on the principal balance of the Note, without in any manner impairing or

- 13 -

affecting this Mortgage or the lien thereof or the priority of this Mortgage, as so extended and modified, as security for the Debt over any such subordinate lien, encumbrance, right, title and interest. The Mortgagee may resort for the payment of the Debt to any other security or guarantee held by the Mortgagee in such order and manner as the Mortgagee, in its discretion, may elect. The Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every additional right and remedy now or hereafter afforded by law or equity.

47. The Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right to the Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by the Mortgagor existing at the time such earlier action was commenced.

48. All remedies provided in this Mortgage are distinct from and cumulative to any other right or remedy under this Mortgage, the Note, or any other agreement between, among others, if any, the Mortgagor and the Mortgagee executed simultaneously or in connection herewith, or afforded by law or equity, and may be exercised concurrently, independently or successively. Wherever in this Mortgage the prior consent of the Mortgagee is required, the consent of the Mortgagee given as to one such transaction shall not be deemed to be a waiver of the right to require such consent to future or successive transactions. Any such consents shall be in writing and may be granted or withheld in mortgagee's sole discretion.

49. Any forbearance by the Mortgagee in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by the Mortgagee or other corrective or security protecting measures by the Mortgagee shall not be a waiver of the Mortgagee's right to accelerate the maturity of the Debt.

## SPECIAL PROVISIONS

50. (a) The Mortgagor acknowledges that, in the event of foreclosure of the Mortgaged Property, the Mortgagee may be required to comply with Article 31-B, New York State Tax Law, also known as the Real Property Gains Tax Law, as it may be amended from time to time (the "Statute"). To enable the Mortgagee to comply with the Statute, if required, the Mortgagor hereby agrees to assist and cooperate with the Mortgagee by furnishing or executing, acknowledging, if required, and delivering such documents, instruments, agreements, forms, schedules and information as the Mortgagee may reasonably request in connection therewith, to the extent the same is available to the Mortgagor, and the Mortgagor agrees to pay the tax that may be due under the Statute.

(b) Without limiting the generality of the foregoing, the Mortgagor shall:

(i) maintain information, documents and records of all capital improvements made to the Mortgaged Property in sufficient detail to comply with the requirements of the Statute.

(ii) upon demand of the Mortgagee, deliver copies to the Mortgagee of and make available for inspection and examination at any time upon demand by the Mortgagee or its duly authorized agent or employee, all such information, documents and records kept in accordance with the Statute or required by the Mortgagee to enable it to comply therewith. Such records shall be kept by the Mortgagor for the duration of this Mortgage.

(iii) In the event of a foreclosure of the Mortgaged Property, prepare, submit, affirm and file with the applicable authority, all forms, returns and documents required of a transferor and undertake all appropriate measures and procedures to comply with the Statute.

(iv) in the event of a foreclosure of the Mortgaged Property, pay the tax determined by the applicable authority to be due. If the Mortgagor fails to perform or comply with the Statute or this Paragraph or fails to pay the tax required by the Statute, the Mortgagee may, but without any obligation to do so and without notice to or demand on the Mortgagor and without releasing the Mortgagor from any obligation, so perform or comply or pay any and all taxes owing under the Statute in such manner and to such extent as the Mortgagee may deem necessary to protect the security of, or to enable it to foreclose the lien of, this Mortgage. All such costs paid by the Mortgagee and the interest thereon at the Default Rate shall be a lien on the Mortgaged Property prior to any claim, lien, title or interest in, to or on or claim upon the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage and shall be deemed to be secured by this Mortgage and evidenced by the Note.

(c) In connection with a foreclosure of the Mortgaged Property, the amount of such tax (and any interest, penalty, fine or other related charges imposed in connection therewith) shall be allowed to the Mortgagee out of the proceeds of any sale or conveyance; and treated as a cost and expense of foreclosure to which the proceeds thereof (or of any of the other aforesaid transactions) shall first be applied.

(d) The Mortgagor hereby assumes complete liability for any costs, penalties, expenses and fees assessed against or paid by the Mortgagee, including reasonable attorneys', accountant's, architect's, and other professionals' or experts' fees and disbursements, which are associated with the performance, payment or compliance with the Statute, and for any costs, penalties and fees assessed as a consequence of a violation by the Mortgagor of this Paragraph.

(e) The Mortgagor also acknowledges and agrees that this Paragraph may be specifically enforced and that the rights of the Mortgagee set forth in this Paragraph are not exclusive and are without limitation of any other rights and remedies to which the Mortgagee shall be entitled pursuant to law or equity.

51. In compliance with Section 13 of the New York State Lien Law, the Mortgagor will receive the advances secured by this Mortgage and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of improvement (as defined in Section 2 of the Lien Law of the State of New York, whether or not the Mortgaged Property is located in that State), and the Mortgagor will apply the same first to the payment of the cost of improvement before using any part of the total of the same for any other purpose.

52. All notices or other communications required to be given pursuant to this Mortgage shall be in writing and be deemed given on the second business day of the Mortgagee next following the deposit of such written notice or communication enclosed in a prepaid wrapper, certified mail, return receipt requested, in a post office or official depository under the care and custody of the United States Postal Service, addressed as follows:

If to the Mortgagor:        107-04 Jamaica Avenue Richmond Hill, New York 11418


If to the Mortgagee:        4700 Falls of Neuse Rd, Ste 190 Raleigh, NC 27609

Any party may change the person or address to whom or which notices are to be given hereunder, by notice duly given hereunder; provided, however, that any such notice shall be deemed to have been given hereunder only when actually received by the party to which it is addressed.

53. If the Mortgagor shall request the Mortgagee's consent or approval pursuant to any of the provisions of this Mortgage or otherwise, and the Mortgagee shall fail or refuse to give, or shall delay in giving, such consent or approval, the Mortgagor shall in no event make, or be entitled to make, any claim for damages (nor shall the Mortgagor assert, or be entitled to assert, any such claim by way of defense, set-off, or counterclaim) based upon any claim or assertion by the Mortgagor that the Mortgagee unreasonably withheld or delayed its consent or approval, and the Mortgagor hereby waives any and all rights that it may have, from whatever source derived, to make or assert any such claim. The Mortgagor's sole remedy for any such failure, refusal, or delay shall be an

- 15 -

action for a declaratory judgment, specific performance, or injunction, and such remedies shall be available only in those instances where the Mortgagee has expressly agreed in writing not to unreasonably withhold or delay its consent or approval or where, as a matter of law, the Mortgagee may not unreasonably withhold or delay the same.

54.    (a) For purposes of this Mortgage, the following terms shall have the following meanings:

"Hazardous Materials" - shall mean existing and future asbestos, urea formaldehyde foam insulation, polychlorinated bithenyls or related or similar materials, petroleum products, explosives, radioactive materials, or any other hazardous or toxic or harmful materials, wastes and substances or any other chemical, material, substance or element which are defined, determined, identified, prohibited, limited or regulated by the Environmental Laws, or any other chemical, material, substance or element which is known to be harmful to the health or safety of occupants of property or which are defined as a hazardous or toxic substance by any federal, state, or local law, ordinance, rule or regulation, including, but not limited to the Federal Water Pollution Control Act (33 U.S.C. (1251 et seq.), the Clean Air Act (42 U.S.C. (7401 et seq.), the Resource Conservation and Recovery Act (42 U.S.C. (6901 et seq.), the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. (9601 et seq.), the Hazardous Materials Transportation Act (49 U.S.C. (1801 et seq.), and/or the regulations promulgated in relation thereto, all as the same may be amended from time to time (collectively, the "Federal Statutes"), the New York State Environmental Conservation Law Article 27, Title 13, (the "State Statute"), and the regulations promulgated in relation thereto, all as the same may be amended from time to time.

"Environmental Laws" - shall mean any applicable federal, state or local laws, rules, regulation, resolutions, ordinances, directives or orders (whether now existing or hereafter enacted or promulgated) or any judicial or administrative interpretation of such laws, rules, regulations, resolutions, ordinances, directives or orders or any other applicable determination regarding land, water, air, health, safety or environment, including for example but not limited to, the Federal Statutes and the State Statute.

"Governmental Authority" - shall mean any federal, state, or local government, governing body, agency, court, tribunal, authority, subdivision, bureau or other recognized body having jurisdiction to enact, promulgate, interpret, enforce, review or repeal any Environmental Law.

"Environmental Complaint" - shall mean any judgment, lien, order, complaint, notice, citation, action, Proceeding or investigation Pending before any Governmental Authority, including, without limitation, any environmental regulatory body, with respect to or threatened against or affecting the Mortgagor or relating to its business, assets, property or facilities or the Mortgaged Property, in connection with any Hazardous Material or any Hazardous Discharge or any Environmental Law.

"Hazardous Discharge" - shall mean any release of a Hazardous Material caused by the seeping, spilling, leaking, pumping, pouring, emitting, using, emptying, discharging, injecting, escaping, leaching, dumping or disposing of any Hazardous Material into the environment, and any liability for the costs of any cleanup or other remedial action.

(b) The Mortgagor covenants, represents and warrants that:

(i) none of the real property owned or occupied by the Mortgagor and located in the state in which the Mortgaged Property is situated, including, but not limited to the Mortgaged Property, has ever been used by previous owners, operators or occupants or the Mortgagor to generate, manufacture, refine, transport, treat, store, handle or dispose, transfer, produce, process or in any manner deal with any Hazardous Material,

(ii) the Mortgagor has not received a summons, citation, directive, letter or other communication, written or oral, from any Government Authority concerning any intentional or unintentional action or omission on the Mortgagor's part which had resulted in the violation of any Environmental Laws, as the same may relate to the Mortgaged Property,

- 16 -

(iii) no lien has been attached to any revenues or any real or personal property owned by the Mortgagor and located in the state where the Mortgaged Property is located, including, but not limited to the Mortgaged Property, for "Damages" and/or "Cleanup and Removal Costs", as such terms are defined in any Environmental Law, or arising from an intentional or unintentional act or omission in violation thereof by the Mortgagor or by any previous owner and/or operator of such real or personal property, including, but not limited to the Mortgaged Property,

(iv) the Mortgagor has duly complied, and shall continue to comply, with the provisions of the Environmental Laws governing it, its business, assets, property, facilities and the Mortgaged Property, and shall keep the Mortgaged Property free and clear of any liens imposed pursuant to such laws,

(v) the Mortgagor shall not, and shall not permit any of its officers, partners, employees, agents, contractors, licensees, tenants, occupants or others to generate, manufacture, refine, transport, treat, store, handle, dispose, transfer, produce, process or in any manner deal with any Hazardous Material on the Mortgaged Property,

(vi) there is not now outstanding any Environmental Complaint issued by any Governmental Authority to the Mortgagor or relating to the Mortgagor's business, assets, property, and facilities or the Mortgaged Property under any Environmental Law, and there is not now existing any condition which, if known by the proper authorities, could result in any Environmental Complaint, and that

(vii) the Mortgagor has, and will continue to have, all necessary licenses, certificates and permits under the Environmental Laws relating to the Mortgagor and its facilities, property, assets, and business, and the Mortgaged Property and the foregoing are in compliance with all Environmental Laws.

(c) If the Mortgagor receives any notice of (i) the presence of Hazardous Materials on the Mortgaged Property, (ii) any violation of or noncompliance with any Environmental Law, (iii) the occurrence of a Hazardous Discharge on or about any asset, business, facility or property of the Mortgagor or caused by the Mortgagor, or (iv) any Environmental Complaint affecting the Mortgagor or the Mortgaged property or the Mortgagor's operations, assets, business, facilities or properties, then the Mortgagor will give written notice of the foregoing to the Mortgagee within three (3) days of receipt thereof and shall (1) promptly comply with the Environmental Laws and all other laws, regulations, resolutions and ordinances to correct, contain, cleanup, remove, resolve or minimize the impact of such Hazardous Materials, Environmental Discharge or Environmental Complaint and (2) shall (i) post a bond from a surety or (ii) a letter of credit issued by a lending institution, with the Mortgagee, the surety or the lending institution, and the form, substance and amount of the bond or letter of credit to be reasonably satisfactory to the Mortgagee and the applicable Governmental Authority, or shall give to the Mortgagee and the applicable Governmental Authority such other security satisfactory in form, substance and amount to both the Mortgagee and the applicable Governmental Authority to assure that the Mortgagor does correct, contain, cleanup, remove, resolve or minimize the impact of such Hazardous Materials, Environmental Discharge or Environmental Complaint.

(d) Without limitation of the Mortgagee's rights under this Mortgage or applicable law, the Mortgagee shall have the right, but not the obligation, to exercise any of its rights to cure as provided in this Mortgage or to enter onto the Mortgaged Property or to take such other actions as it deems necessary or advisable to correct, contain, cleanup, remove, resolve or minimize the impact of, or otherwise deal with, any such Hazardous Material, Hazardous Discharge or Environmental Complaint upon its receipt of any notice from any person or entity or Governmental Authority, informing the Mortgagee of such Hazardous Material, Hazardous Discharge or Environmental Complaint, which if true, could adversely affect the Mortgagor or any part of the Mortgaged Property or which, in the sole opinion of the Mortgagee, could adversely affect its collateral security under this Mortgage. All reasonable costs and expenses incurred and paid by the Mortgagee in the exercise of any such rights shall be paid by the Mortgagor to the Mortgagee upon demand together with the interest thereon at the Default Rate of interest. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or

accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.

(e)  Upon written request, the Mortgagor shall provide to the Mortgagee the following information pertaining to all operations conducted in or on the Mortgaged Property:

(i)  copies of all licenses, certificates and permits under the Environmental Laws;

(ii)  material safety data sheets and maps, diagrams and site plans showing the location of all storage areas and storage tanks for all Hazardous Materials or other chemicals in, use at, manufactured at, brought to or stored at the Mortgaged Property;

(iii)  copies of all materials filed with any Governmental Authority;

(iv)  a description of the operations and processes of the Mortgagor; and

(v)  any other information which the Mortgagee may reasonably require.

(f)  Upon reasonable notice to the Mortgagor, the Mortgagee, its officers, employees, agents and contractors, may enter the Mortgaged Property to inspect it and to conduct, complete and take such tests, samples, analyses and other processes as the Mortgagee shall require to determine the Mortgagor's compliance with this Paragraph and the Environmental Laws. The costs, expenses and fees of the Mortgagee of such entry, inspection, tests, samples, analyses and processes shall be paid and reimbursed by the Mortgagor upon demand by the Mortgagee. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.

(g)  In addition to those events of default previously specified in this Mortgage, the occurrence of any of the following events shall constitute a default under this Mortgage, entitling the Mortgagee to all rights and remedies provided therefor:

(i)  if the Mortgagor shall fail to comply with any provision of Section (c); or

(ii)  if any Governmental Authority asserts or creates a lien upon any or all of the Mortgaged Property by reason of the presence of Hazardous Materials or the occurrence of a Hazardous Discharge or Environmental Complaint or otherwise, and the Mortgagor does not, within the earlier of thirty (30) days after the recording thereof or prior to the institution by such Governmental Authority of any steps to foreclose such lien, cause such lien to be discharged of record.

(iii)  if any Governmental Authority asserts a claim against the Mortgagor, the Mortgaged Property or the Mortgagee for damages or cleanup or remedial costs related to any Hazardous Materials or any Hazardous Discharge or any Environmental Complaint; provided, however, such claim shall not constitute a default if, within five (5) business days of the Mortgagor's receipt of notice of the foregoing:

(1)  the Mortgagor can prove to the Mortgagee's satisfaction, in its sole discretion, that the Mortgagor has commenced and is diligently pursuing either: (A) a cure, remedy or correction of the event which constitutes the basis for the claim, and is continuing diligently to pursue such cure or correction to completion, in strict compliance with the Environmental Laws or Environmental Complaint, as applicable, or (B) proceedings for injunction, a restraining order or other appropriate emergency relief prevent such Governmental Authority from asserting such claim, which relief is granted within ten (10) days of the occurrence giving rise to the claim and the injunction, order or emergency relief is not thereafter dissolved or reversed on appeal; and

- 18 -

(2) in either of the foregoing events, the Mortgagor shall (i) give such surety or other security, which may be required by and satisfactory to both the Governmental Authority asserting the claim and to the title company insuring the interest of the Mortgagee under this Mortgage (the "Title Company"), to secure the proper and complete cure or correction of the event which constitutes the basis for the claim or, (ii) at the Mortgagee's request if no such bond or security has been given, the Mortgagor shall post a bond from a surety or a letter of credit issued by a lending institution, with the Mortgagee, the surety or the lending institution, and the form, substance and amount of the bond or letter of credit to be reasonably satisfactory to the Mortgagee and to the Title Company, or shall give to the Mortgagee and the Title Company such other security satisfactory in form, substance and amount to the Mortgagee and to the Title Company, to secure the payment for all of the work, labor and services required to effect a proper and complete cure or correction of the condition which constitutes the basis for the claim.

(h) The Mortgagor covenants and agrees, at its sole cost and expense, to indemnify, protect, and save the Mortgagee harmless against and from any and all damages, losses, liabilities, obligations, penalties, claims, litigation, demands, defenses, judgments, suits, proceedings, costs, disbursements or expenses of any kind or of any nature whatsoever (including, without limitation, reasonable attorneys' and experts' fees and disbursements) which may at any time be imposed upon, incurred by or asserted or awarded against the Mortgagee and arising from or out of:

(i) the Mortgagor's failure to perform and comply with this Paragraph, or

(ii) any Hazardous Material, any Hazardous Discharge, any Environmental Complaint, or any Environmental Law applicable to the Mortgagor, its operations, business, assets, property or facilities, or the Mortgaged Property, or

(iii) any action against the Mortgagor under this indemnity.

55. (a) The Mortgagor hereby consents to the jurisdiction of the courts of the State of New York and the state where the Mortgaged Property is located if the Mortgaged Property is not located in the State of New York in any actions, suits or proceedings arising out of or in connection with the Note or this Mortgage. In addition, the Mortgagor irrevocably and unconditionally waives any objection which the Mortgagor may now or hereafter have to the laying of venue of any of the aforesaid actions, suits, or proceedings arising out of or in connection with the Note or this Mortgage brought in any of the aforesaid courts, and hereby further irrevocably and unconditionally waives the right to plead or claim that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum; and

(b) the Mortgagor waives the requirements of personal service in connection with any actions, suits or proceedings arising out of or in connection with the Note or this Mortgage, and consents that all service of process may be made by certified mail, return receipt requested, addressed to the Mortgagor at the address of the Mortgagor set forth above in Paragraph 52 as such address may be changed as therein set forth.

56 Except to the extent that the law of the state where the Mortgaged Property is located must be applied because this Mortgage constitutes a lien on premises located in that state, this Mortgage shall be construed in accordance with the laws of the State of New York.

57. The Mortgagee shall, within thirty (30) days following written request therefor, but not more frequently than twice in any twelve month period, furnish to the Mortgagor a statement setting forth the principal balance then outstanding on the Note, accrued interest thereon to the date of the statement and the date to which such interest has been paid.

58. The Mortgagor will, at the request of the Mortgagee and at the cost and expense of the Mortgagor (a) promptly correct any defect, error or omission which may be discovered in the contents of this Mortgage, or in the execution, acknowledgment or recordation hereof, or (b) promptly do, execute, acknowledge and deliver any and all such further acts, deeds, conveyances, mortgages, deeds of trust, amendments, supplements, assignments,

- 19 -

estoppel certificates, financing statements and continuations thereof, notices of assignment, transfers, certificates, assurances and other instruments as the Mortgagee may reasonably require from time to time in order to (i) effectuate the purposes of this Mortgage, (ii) subject to the lien and security interest hereby created any of the Mortgagor's properties, rights or interests covered or now or hereafter intended to be covered hereby, (iii) perfect and maintain such lien and security interest, or (iv) convey, grant, assign, transfer and confirm unto the Mortgagee the rights granted or now or hereafter intended to be granted to the Mortgagee hereunder or under any other instrument executed in connection with this Mortgage or which the Mortgagor may be or become bound to convey, mortgage or assign to the Mortgagee in order to carry out the intention or facilitate the performance of the provisions of this Mortgage.

59. **Purpose of Loan.**

**The Mortgagor represents to Mortgagee that the loan evidenced by the Note and secured by this Mortgage ("Loan") is for business or commercial purposes only and not for personal, family, consumer or household purposes.** Mortgagor acknowledges that Mortgagee has made the Loan to Mortgagor in reliance upon the above representation by Mortgagor. The above representation by Mortgagor will survive the closing and repayment of the Loan.

IN WITNESS WHEREOF this Mortgage has been duly executed by the Mortgagor on the day and year first above written.

IN PRESENCE OF:  _____

107-04 Jamaica Ave. Corp.

By: _____
    Kumal Chetram, President


State of New York)

                    ss.:

County of Queens)

On the 29th day of August, 2007 before me, the undersigned, a Notary Public in and for said State, personally appeared **Kumal Chetram**  personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

JAIME JORDAN
Notary Public, State of New York
No. 01JO6079109
Qualified in Queens County
Commission Expires August 12, 20__

_____
Notary Public

SEAL

- 20 -

## SCHEDULE A

### PROPERTY DESCRIPTION

All that certain plot, piece or parcel of land, with the buildings and improvements there on erected, situate, lying and being at Richmond Hill and County of Queens, City and State of New York, shown and designated as the whole Lot Numbered 4 and the easterly 35/100 of a foot of Lot Number 5 on a certain map entitled, "Map of Richmond Hill West, surveyed September 1904" and filed in the Office of the Clerk of the County of Queens, February 25, 1905 as Map Number 406, which said lot and part of lot being taken together as one parcel are with reference to said map more particularly bounded and described as follows:

BEGINNING at a point on the southerly side of Jamaica Avenue, distant 19.75 feet easterly from the corner formed by the intersection of the southerly line of Jamaica Avenue with the easterly line of 107th Street (formerly Herald Avenue and formerly Grant Avenue);

RUNNING THENCE southerly parallel with 107th Street and part of the distance through a party wall 105.43 feet deed (105.48 feet USS) more or less to the northerly line of Lot Numbered 6 on a said map;

THENCE easterly along the northerly line of said lot numbered 6 on a said map and parallel with Pitkin Place, 20.35 feet;

THENCE northerly again parallel with 107th Street 102.46 feet to the southerly side of Jamaica Avenue and;

THENCE westerly along the said southerly side of Jamaica Avenue 20.40 feet to the point or place of BEGINNING.

THESE PREMISES ARE ~~OR WILL BE~~ NOT
IMPROVED BY A ONE OR TWO FAMILY
DWELLING ONLY

+ Commercial Property

- 21 -

MORTGAGE NO.: 00000000005006          MERS #: 100612600000000484
TITLE NO:       RUGT5280

PREMISES:        107-04 Jamaica Avenue Richmond Hill New York 11418

Section: -
Block:    - 9297
Lot:      - 79
County:   - Queens

107-04 Jamaica Ave. Corp.
TO

GREYSTONE BANK

## MORTGAGE

**RETURN BY MAIL TO:**
GREYSTONE BANK
4700 Falls of Neuse Rd, Ste 190
Raleigh, NC 27609

- 22 -

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.



2007091600027002002E6528

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 13 |
|---|---|---|
| **Document ID:** 2007091600027002 | Document Date: 08-29-2007 | Preparation Date: 10-05-2007 |
| Document Type: ASSIGNMENT OF LEASES AND RENTS | | |
| Document Page Count: 12 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| RAM ABSTRACT LTD | GREYSTONE BANK |
| AS AGENT OF UNITED GENERAL (RUGT5280)Q | 4700 FALLS OF NEUSE ROAD, SUITE 190 |
| 102-34 JAMAICA AVENUE | RALEIGH, NC  27609 |
| RICHMOND HILL, NY  11418 | |
| 718-846-7800 | |
| PICK UP NIMA | |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 9297 | 79 | Entire Lot | 107-04 JAMAICA AVENUE |

**Property Type:** 1-3 FAMILY WITH STORE / OFFICE

### CROSS REFERENCE DATA

**Document ID:** 2007091600027001

### PARTIES

| ASSIGNOR: | ASSIGNEE: |
|---|---|
| 107-04 JAMAICA AVE. CORP. | GREYSTONE BANK |
| 107-04 JAMAICA AVENUE | 4700 FALLS OF NEUSE ROAD |
| RICHMOND HILL, NY  11418 | RALEIGH, NC  27609 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 577,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | RECORDED OR FILED IN THE OFFICE | | |
| MTA: | $ | 0.00 | OF THE CITY REGISTER OF THE | | |
| NYCTA: | $ | 0.00 | CITY OF NEW YORK | | |
| Additional MRT: | $ | 0.00 | Recorded/Filed      10-09-2007 16:31 | | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | | |
| Recording Fee: | $ | 97.00 | 2007000511551 | | |
| Affidavit Fee: | $ | 8.00 | | | |

*Annette M Hill*

*City Register Official Signature*

**RAM ABSTRACT LTD.**
102-34 Jamaica Avenue
Richmond Hill, NY 11418
718-846-7800

B: 9297
L: 79

## ASSIGNMENT OF LESSOR'S INTEREST IN LEASE(S)

THIS ASSIGNMENT, made this 29th day of August, 2007 by **107-04 Jamaica Ave. Corp.** a Corporation with an address 107-04 Jamaica Avenue, Richmond Hill, NY 11418 **(the "Assignor")** in favor of **GREYSTONE BANK** a corporation or association organized under the laws of the State of NC, having an office at 4700 Falls of Neuse Rd, Ste 190 Raleigh, NC 27609, **(the "Assignee")**.

**W I T N E S S E T H :**

WHEREAS, for the purpose of additionally securing the payment of the indebtedness evidenced by a mortgage note, of even date herewith, in the principal sum of **$577,000.00** (the "Note"), made by the Assignor payable to the order of the Assignee, including any extensions and renewals thereof, as well as the payment, observance, performance and discharge of all other obligations, covenants, conditions and warranties contained in the mortgages, and any other agreement of even date herewith securing the payment of or otherwise dealing with the Notes (collectively the "Mortgage"), executed by the Assignor in favor of the Assignee, covering the premises, together with the buildings and improvements thereon (hereinafter called the "Premises"), situated at **107-04 Jamaica Avenue Richmond Hill, New York 11418** in the County of Queens and State of New York and more particularly described therein and in Schedule "A" annexed hereto and made a part hereof, and any extensions, supplements and consolidations thereof;

THE ASSIGNOR DOES HEREBY AGREE AS FOLLOWS:

FOR VALUE RECEIVED, the Assignor does hereby SELL, ASSIGN, TRANSFER, SET OVER and DELIVER unto the Assignee, the leases more particularly identified in the Schedule of Leases attached hereto as Schedule "B", annexed hereto and made a part hereof;

TOGETHER with any and all extensions and renewals thereof and any and all further leases (including, without limitation, subleases thereof and tenancies following attornment) upon all or any part of the Premises (all such leases, subleases and tenancies being hereinafter collectively included in the designation the "Leases"),

TOGETHER with any and all guarantees of tenant's performance under any Lease, and

TOGETHER with the immediate and continuing right to collect and receive all of the rents, income, receipts, revenues, issues and profits now due or which may become due or to which the Assignor may now or shall hereafter (including the period of redemption, if any) become entitled or may demand or claim, arising or issuing from or out of the Leases or from or out of the Premises or any part thereof, including but not by way of limitation: minimum rents, additional rents, percentage rents, parking maintenance, tax and insurance contributions, deficiency rents and liquidated damages following default, the premium payable by any tenant upon the exercise of a cancellation privilege originally provided in any Lease, and all proceeds payable under any policy of insurance covering loss of rent resulting from untenantability caused by destruction or damage to

- 1 -

the Premises together with any and all rights and claims of any kind which the Assignor may have against any tenant under the Leases or any subtenants or occupants of the Premises (all such moneys, rights and claims in this Paragraph described being hereinafter called "Rents"), EXCEPTING THEREFROM, any sums which by the express provisions of any Lease are payable directly to any governmental authority or to any other person, firm or corporation other than the landlord under any Lease;

SUBJECT, HOWEVER, to a license hereby granted by the Assignee to the Assignor, but limited as hereinafter provided, to collect and receive all of the Rents.

TO HAVE AND TO HOLD the same unto the Assignee, its successors and assigns forever, or for such shorter period as hereinafter may be indicated.

1.    **Representations and Warranties Concerning Leases.**

The Assignor hereby represents and warrants to Assignee the following:

(a) that the Assignor is the owner in fee simple absolute of the Premises and has good title as landlord to the Leases hereby assigned and good right to assign the same, and that no other person, firm or corporation has any right, title or interest as landlord therein;

(b) that the Assignor has duly and punctually performed all and singular the terms, covenants, conditions and warranties of the Leases on the Assignor's part to be kept, observed and performed;

(c) that all Leases are valid and unmodified except as indicated herein and in full force and effect;

(d) that the Assignor has not previously sold, assigned, transferred, mortgaged or pledged the Rents from the Premises, whether now due or hereafter to become due;

(e) that any of the Rents due and issuing from the Premises or from any part thereof for any period subsequent to the date hereof have not been collected and that payment of any of same has not otherwise been anticipated, waived, released, discounted, set off, or otherwise discharged or compromised except for rental concessions not exceeding two (2) months in connection with any Lease or otherwise as approved by the Assignee;

(f) that the Assignor has not received any funds or deposits from any tenant for which credit has not already been made on account of accrued rents;

(g) that the Assignor has not received, prior to the date of execution of the Mortgage, any bona fide and acceptable offer to purchase the Premises or any part thereof which would in any way affect any right or option of first refusal to purchase same now contained in any existing Lease; and

- 2 -

(h) that no tenant under any existing Lease is in default of any of the terms thereof.

**2.     Assignor'(s) Covenants as to Leases and Rents.**

The Assignor covenants and agrees as follows to:

(a) observe, perform and discharge, duly and punctually, all and singular, the obligations, terms, covenants, conditions of the existing Leases and of all future Leases affecting the Premises, on the part of the Assignor to be observed, performed and discharged, so as not to permit, with respect to any Lease, a tenant thereunder to cancel or terminate any Lease or to offset against Rents or additional rents due thereunder, and to give prompt notice to the Assignee of any failure on the part of the Assignor to observe, perform and discharge same;

(b) notify and direct in writing each and every present or future tenant or occupant of the Premises or of any part thereof that any security deposit or other deposits heretofore delivered to the Assignor have been retained by the Assignor or assigned and delivered to the Assignee as the case may be;

(c) enforce or secure the performance of each and every obligation, term, covenant, condition and agreement in the Leases by any landlord thereunder to be performed; and

(d) to appear in and defend any action or proceeding arising under, occurring out of, or in any manner connected with the Leases or the obligations, duties, or liabilities of the Assignor and any tenant thereunder and, upon request by the Assignee, will do so in the name and on behalf of the Assignee but at the expense of the Assignor, and to pay all reasonable costs and expenses of the Assignee, including reasonable attorney's fees in any action or proceeding in which the Assignee may appear.

**3.     Assignor's Covenants as to Performance.**

The Assignor covenants and agrees not to, without the prior written consent of the Assignee:

(a) receive or collect any Rents from any present or future tenant of the Premises or any part thereof for a period of more than one (1) month in advance, other than the security deposited in connection with the Leases, nor pledge, transfer, mortgage or otherwise encumber or assign future payments of the Rents;

(b) waive, excuse, condone, discount, set-off, compromise, or in any manner release or discharge any tenants thereunder, of and from any obligations, covenants, conditions and agreements by said tenant to be kept, observed and performed, including the obligation to pay the Rents thereunder, in the manner and at the place and time specified therein;

(c) cancel, terminate or consent to any surrender of any Lease, except as may be provided in the Lease, or commence an action of ejectment or any summary proceedings for dispossession of the tenant under any Lease, or exercise any right of recapture provided in any Lease, nor modify, or in any way alter the terms thereof;

(d) lease any part of the Premises, nor renew or extend the term of any Lease unless an option therefor was originally so reserved by tenant in the Lease for a fixed and definite rental;

(e) relocate any tenant of a Lease within the Premises, nor consent to any modification of the express purposes for which the Premises have been leased, nor consent to any subletting of the Premises or any part thereof, or to an assignment of any Lease by any tenant thereunder or to any assignment or further subletting of any sublease, except as may be provided in the Lease, without, in each instance enumerated in this Paragraph, the prior written consent of the Assignee; or

(f) consent or agree to accept a subordination of any Lease to any mortgage or other encumbrance (other than the Mortgages) now or hereafter affecting the Premises, without the written consent of the Assignee.

4.    **Default Deemed Default under Notes and Mortgages.**

In the event any representation or warranty herein of the Assignor shall be found to be untrue or the Assignor shall be in default in the observance and performance of any obligation, term, covenant, or condition herein, then, in each such instance, the same shall constitute and be deemed to be a default under the Notes and Mortgages thereby entitling the Assignee to declare all sums secured thereby and hereby immediately due and payable and to exercise any and all of the rights and remedies provided thereunder and hereunder as well as by law.

5.    **License to Collect Rents.**

So long as there shall not exist any default by the Assignor in the payment of any indebtedness secured hereby or in the payment of any indebtedness secured hereby or in the observance and performance of any obligation, term, covenant, condition or warranty herein, in the Note or in the Mortgage, beyond the expiration of any applicable grace and notice periods, the Assignor shall have the right under a license granted hereby (but limited as provided in the following paragraph) to collect, but not for any period greater than one month in advance, as aforesaid, all of the Rents, arising from or out of the Leases or any renewals or extensions thereof, or from or out of the Premises or any part thereof, and the Assignor shall receive the Rents, and shall hold same, as well as the right and license to receive same, as a trust fund to be applied, and the Assignor hereby covenants to so apply same, first, to the payment of any sums the non-payment of which might result in the imposition of criminal penalties or criminal liability upon the Assignor, second, to the payment of taxes upon the Premises before penalty or interest are due thereon, third, to the cost of such insurance and of such maintenance and repairs as is required by the terms of the Mortgages, fourth, to satisfaction of all obligations under the Leases, and, fifth, to the payment of interest and principal becoming due pursuant to the Note and Mortgage before using any part of the same for any other purposes.

- 4 -

6.   **Assignee's Rights to Collect Rents.**

Upon or at any time after default by the Assignor under this Agreement, or, beyond the expiration of any applicable grace and notice periods, under the Note or Mortgage or under any security agreement or loan agreement of even date herewith to or with the Assignee, the Assignee, at its option, shall have the complete right, power and authority hereunder then or thereafter to exercise and enforce any or all of the following rights and remedies:

(a) to terminate the license granted to the Assignor to collect as aforesaid the Rents, and then and thereafter, without taking possession, in the Assignee's own name, to demand, collect, receive, sue for, attach and levy the Rents, to give proper receipts, releases and acquittances therefor, and after deducting all reasonably necessary and proper costs and expenses of operation and collection, as determined by the Assignee, including reasonable attorney's fees, to apply the net proceeds thereof, together with any funds of the Assignor deposited with the Assignee, upon any indebtedness secured hereby and in such order as the Assignee may determine;

(b) to declare all sums secured hereby immediately due and payable and, at its option, exercise all of the rights and remedies contained in the Note and Mortgage; and

(c) without regard to the adequacy of the security, with or without any action or proceeding, through any person or by agent, or by a receiver to be appointed by a court of competent jurisdiction and irrespective of the Assignor's possession, then or thereafter to enter upon, take possession of, manage and operate the Premises or any part thereof, make, modify, enforce, cancel or accept surrender of any Lease now in effect or hereafter in effect on the Premises or any part thereof; remove and evict any tenant and otherwise do any act or incur any costs or expense as the Assignee shall deem proper to protect the security hereof, as fully and to the same extent as the Assignor could do if in possession, and in such event to apply the Rents collected as hereinabove provided.

7.   **No Mortgagee in Possession.**

The acceptance by the Assignee of this Assignment, with all of the rights, powers, privileges and authority so created, shall not, prior to entry upon and taking of possession of the Premises by the Assignee, be deemed or construed to constitute the Assignee a mortgagee in possession nor at any time or any event obligate the Assignee to appear in or defend any action or proceeding relating to the Leases or to the Premises, or to take any action hereunder, or to expend any money or incur any expenses or perform or discharge any obligation, duty or liability under the Leases, or to assume any obligation or responsibility for any security deposits or other deposits delivered to the Assignor by any tenant thereunder and not assigned and delivered to the Assignee nor shall the Assignee be liable in any way for any injury or damage to person or property sustained by any person or persons, firm or corporation in or about the Premises;

8.   **No Waiver of Default.**

The collection of the Rents and application as provided above in this Assignment and/or the entry upon and taking possession of the Premises shall not cure or waive any default or waive, modify or effect any notice of default under the Note and Mortgage or invalidate any act done pursuant to such notice, and the enforcement of such right or remedy by the Assignee, once exercised, shall continue for so long as the Assignee shall elect, notwithstanding that the collection and application aforesaid of the Rents may have cured for the time being the original default.  If the Assignee shall thereafter elect to discontinue the exercise of any such right or remedy, the same or any other right or remedy hereunder may be reasserted at any time and from time to time following any subsequent default.

9.   **Appointment of Power of Attorney.**

The Assignor does hereby constitute and appoint the Assignee its true and lawful attorney, coupled with an interest of the Assignor and in the name, place and stead of the Assignor:

(a) to demand, sue for, attach, levy, recover and receive any premium or penalty payable upon the exercise, by any tenant under any Lease, of a privilege of cancellation originally provided in the Lease, and to give proper receipts, releases and acquittances therefor and, after deducting expenses of collection, to apply the net proceeds as a credit upon any portion, as selected by the Assignee, of the indebtedness secured hereby,

notwithstanding the fact that the amount owing thereunder may not then be due and payable or that the indebtedness is otherwise adequately secured, and the Assignor does hereby authorize and direct any such tenant to deliver such payment to the Assignee in accordance with the foregoing, and does hereby ratify and confirm, as between the Assignee and the Assignor, all whatsoever that its said attorney, the Assignee herein, shall do or cause to be done by virtue of the powers granted hereby, and

(b) to subject and subordinate at any time and from time to time, any Lease, to the lien of the Mortgage or any other mortgage or deed of trust on the Premises, or to request or require such subordination, where such reservation, option or authority was reserved under any Lease, to the Assignor, or in any case, where the Assignor otherwise would have the right, power or privilege so to do.

The Assignor does hereby warrant that the Assignor has not, at any time prior to the date hereof, exercised any such rights as set forth above in this Paragraph 9 and covenants not to exercise any such right so long as any part of the indebtedness secured hereby shall remain unpaid.

The appointment of the Assignee as the Attorney-in Fact for the Assignor as provided above in this Paragraph is to be irrevocable and continuing and the rights, powers and privileges set forth above shall be exclusive in the Assignee, its successors and assigns so long as any part of the indebtedness secured hereby shall remain unpaid.

### 10. Indemnification of the Assignee.

The Assignor hereby agrees to indemnify and hold the Assignee harmless of and from any and all liability, loss, damage or expense which it may or might incur under or by reason of this Assignment, or for any action taken by the Assignee hereunder except actions taken by the Assignee in accordance with the authority and rights granted to it in Paragraph 9 above (but nothing herein shall limit or impair, as between the Assignee and the Assignor, the Assignor's ratification and confirmation of the Assignee's action taken pursuant to Paragraph 9 above), or by reason or in defense of any and all claims and demands whatsoever which may be asserted against the Assignee arising out of the Leases, including, but without limitation thereto, any claim by any tenant of credit for rental paid to and received by the Assignor, but not delivered to the Assignee, for any period under any Lease more than one month in advance of the due date thereof; should the Assignee incur any such liability, loss, damage or expense, the amount thereof (including reasonable attorney's fees) with interest thereon at the default rate, if any, set forth in the Note and Mortgage shall be payable by the Assignor immediately without demand, and shall be secured hereby and by the Mortgage.

### 11. Assignment of Future Leases-Further Assurances.

Until the indebtedness secured hereby shall have been paid in full, the Assignor does hereby transfer and assign to the Assignee any and all other and future leases upon all or any part of the Premises upon the same terms and conditions as herein contained and this Assignment shall be sufficient to carry out the intent of the foregoing without need for any further instrument or assignment but, notwithstanding the foregoing, the Assignor hereby covenants and agrees to make, execute and deliver unto the Assignee, upon demand, and at any time or times, any and all further assignments and any instrument required by the Assignee to confirm its rights and privileges hereunder and the Assignor's records, and instruments, including, but not limited to, rent rolls and books of account, that the Assignee may deem to be advisable for carrying out the true purposes and intent of this Assignment (including assignment of the rent under any lease with the United States Government if and to the extent permissible by law, after allowance of the rental claim, ascertainment of the amount due and issuance of the warrant for payment thereof).

### 12. No Waiver of Remedies under this Assignment

The failure of the Assignee to avail itself of any of the terms, covenants and conditions of this Assignment for any period of time or at any time or times shall not be construed or deemed to be a waiver of any such right, and nothing herein contained, nor anything done or omitted to be done by the Assignee pursuant hereto shall be deemed a waiver by the Assignee of any of its rights and remedies under the Note and Mortgage or under the laws of the state in which the Premises are situate. The right of the Assignee to collect the said indebtedness and to enforce any other security therefor may be exercised by the Assignee, either prior to, simultaneously with, or subsequent to any action taken hereunder.

- 6 -

### 13.    Rejection of Leases.

In the event a tenant under any Lease should be the subject of any proceeding under the Federal Bankruptcy Act (Title 11 U.S.C.) or any other federal, state, or local statute which provides for the possible termination or rejection of the Leases assigned hereby, Assignor covenants and agrees that if any of the Leases is so rejected, no settlement for damages shall be made without prior written consent of the  Assignee, and any check in payment of damages for rejection of any Lease will be made payable both to the Assignor and Assignee. Assignor hereby assigns any such payment to Assignee and further covenants and agrees that upon the request of Assignee, it will duly endorse to the order of Assignee any check, the proceeds of which will be applied to whatever portion of the indebtedness secured by this Agreement Assignee may elect.

### 14.    No Merger of Estates.

So long as any of the indebtedness secured hereby and by the Mortgage shall remain unpaid, unless the Assignee shall otherwise consent in writing, the fee title and the leasehold estate on the Premises as hereinbefore described shall not merge, but shall always be kept separate and distinct, notwithstanding the union of said estate either in the Assignor or in any tenant or in a third party by purchase or otherwise.

### 15.    Termination of Assignment.

Upon payment in full of all of the indebtedness secured by the Notes and Mortgages and of all sums payable hereunder, this Assignment shall become and be void and of no effect, but the affidavit, certificate, letter or statement of any officer of the Assignee showing any part of said indebtedness to remain unpaid shall constitute conclusive evidence of the validity, effectiveness and continuing force of this Assignment, and any person, firm or corporation, may and is hereby authorized to rely thereon. A demand on any tenant made by the Assignee for payment of Rents by reason of any default claimed by the Assignee shall be sufficient warrant to said tenant to make future payments of Rents to the Assignee without the necessity for further consent by the Assignor.

### 16.    Modification of Terms of Notes and Mortgages.

Notwithstanding any variation of the terms of the Note and Mortgage, including increase or decrease in the principal amount thereof or in the rate of interest payable thereunder or any extension of time for payment thereunder or any release of part or parts of any security given therefor, the Leases and the benefits hereby assigned shall continue as additional security in accordance with the terms of this Assignment.

### 17.    Additional Security.

The Assignee may take security in addition to the security already given the Assignee for the payment of the principal and interest provided to be paid in or by the Note and Mortgage or may release such other security, may release any party primarily or secondarily liable on the Note and Mortgage, may grant or make extensions, renewals, modifications or indulgences with respect to the Note and Mortgage and any replacements thereof, which replacement of the Note and Mortgage may be on the same or on terms different from the present terms of the Note and Mortgage, and may apply any other security therefor held by it to the satisfaction of the Note and Mortgage without prejudice to any of its rights hereunder.

### 18.    Assignment to Subsequent Holders.

Subject to the provisions of Paragraph 15 above, the Assignee shall have the right to assign the Assignor's right, title and interest in the Leases to any subsequent holder of the Note and Mortgage, and no assignee of the Assignee's interest in the Leases shall be liable to account to the Assignor for the Rents accruing after a default in the Note and Mortgage.

### 19.    Entire Agreement.

This instrument contains the entire agreement of the parties concerning the subject hereof.  No variation, change, amendment, modification, abridgement, cancellation or discharge hereof or of any part hereof shall be binding upon the Assignee unless set forth in a document duly executed by the Assignee.

- 7 -

20.   **Notices.**

All notices or other communications required to be given pursuant to this Assignment shall be given pursuant to the notice provisions set forth in the Mortgage.

21.   **Runs with the Land-Successors and Assigns.**

The terms, covenants, conditions and warranties contained herein and the powers granted hereby shall run with the land, shall inure to the benefit of and bind all parties hereto and their respective heirs, executors, administrators, successors and assigns, all tenants, subtenants and assigns of same, all subsequent owners of the Premises, and all subsequent holders of the Note and Mortgage.

22.   **Severability.**

If any provision of this Assignment or the application thereof to any entity, person, or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Assignment and the application of its provisions to other entities, persons, or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

23.   **Third Party Beneficiaries.**

It is expressly agreed by Assignor that this Assignment shall not be construed or deemed made for the benefit of any third party or parties.

24.   **Construction.**

Whenever used herein and the context requires it, the singular number shall include the plural, the plural the singular, and any gender shall include all genders. All obligations of each Assignor hereunder shall be joint and several.

25.   **Governing Law.**

Except to the extent that the internal law of the state where the Premises is located (and not the law of conflicts) must be applied this Assignment shall be construed in accordance with the laws (except the law of conflicts) of the State of New York.

26.   **No Joint Venture.**

Nothing contained herein shall create any joint venture, partnership, agency or trust arrangement between the Assignor and the Assignee.

27.   **Applicability to Deed of Trust.**

The Note and Mortgage as used in this Assignment shall be deemed to include a Deed of Trust Note and a Deed of Trust if that form of evidence of security is used.

28.   **Conflict with the Mortgages.**

In case of any conflict between the terms of this Assignment and the terms of the Mortgage, the terms of this Assignment shall prevail.

29.   **Headings, etc.**

The headings and captions of various paragraphs of this Assignment are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

IN WITNESS WHEREOF, the Assignor has executed this Assignment on the day and year first above written.


IN PRESENCE OF: _____


107-04 Jamaica Ave. Corp.

By: _____
          Kumai Chetram, President



State of New York )
                                    ss.:
County of Queens    )


On the **29th** day of **August, 2007** before me, the undersigned, a Notary Public in and for said State, personally appeared **Kumal Chetram** personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public                                                                 o t A l

JAIME JORDAN
Notary Public, State of New York
No. 01JO6079109
Qualified in Queens County
Commission Expires August 12, 20

ꞌ꜀ꞏ JORDAN
꜀ꞏ ꜀ꞏ ꞏ ꞏ ꞏ State of New York
ꞏ06079109
ꞏ ꞏ ꞏeens County
ꞏ ꞏꞏꞏꞏ August 12, 20

## SCHEDULE A

PROPERTY DESCRIPTION

All that certain plot, piece or parcel of land, with the buildings and improvements there m erected, situate, lying and being at Richmond Hill and County of Queens, City and State of New York, shown and designated as the whole Lot Numbered 4 and the easterly 35/100 of a foot of Lot Number 5 on a certain map entitled, "Map of Richmond Hill West, surveyed Septembe 1904" and filed in the Office of the Clerk of the County of Queens, February 25, 1905 as Map Num ber 406, which said lot and part of lot being taken together as one parcel are with reference to sr id map more particularly bounded and described as follows:

BEGINNING at a point on the southerly side of Jamaica Avenue, distant 19.75 feet east rly from the corner formed by the intersection of the southerly line of Jamaica Avenue with the asterly line of 107th Street (formerly Herald Avenue and formerly Grant Avenue):

RUNNING THENCE southerly parallel with 107th Street and part of the distance thro gh a party wall 105.43 feet deed (105.48 feet USS) more or less to the northerly line of Lot Numbe ed 6 on a said map;

THENCE easterly along the northerly line of said lot numbered 6 on a said map and p rallel with Pitkin Place, 20.35 feet;

THENCE northerly again parallel with 107th Street 102.46 feet to the southerly side of Jamaica Avenue and;

THENCE westerly along the said southerly side of Jamaica Avenue 20.40 feet to the p int or place of BEGINNING.

THESE PREMISES ARE ~~OR WILL BE~~ NOT IMPROVED BY A ONE OR TWO FAMILY DWELLING ONLY + Commercial Property

## SCHEDULE "B"

All leases affecting the whole or any part of the Premises as of the date hereof and all leases hereafter entered into which shall affect the whole or any part of the Premises.

MORTGAGE NO.:  00000000005006                TITLE NO.    RUGT5280

PREMISES:  107-04 Jamaica Avenue Richmond Hill, New York 11418

Section:  -
Block:   - 9297
Lot:     - 79
County:  - Queens

107-04 Jamaica Ave. Corp.

TO

GREYSTONE BANK

ASSIGNMENT OF LESSOR'S INTEREST IN LEASE(S)

**RETURN BY MAIL TO:**

GREYSTONE BANK
4700 Falls of Neuse Rd, Ste 190
Raleigh, NC 27609

- 12 -

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2007091600027002002SABA9

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

Document ID: 2007091600027002   Document Date: 08-29-2007   Preparation Date: 10-05-2007
Document Type: ASSIGNMENT OF LEASES AND RENTS

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

255 MORTGAGE TAX EXEMPT AFFIDAVIT                     1

**255 AFFIDAVIT**

STATE OF NEW YORK        )
                                                  ss.:
COUNTY OF Queens)

1.        Kumal Chetram, President of 107-04 Jamaica Ave. Corp.., being duly sworn, deposes and says that (s)he is the owner of premises known as 107-04 Jamaica Avenue Richmond Hill New York 11418, which is designated as   Block 9297 Lot 79 on the Tax Map of the County of Queens and is fully familiar with the facts and circumstances described herein:

2.        Annexed hereto and incorporated into this affidavit as if fully set forth at length herein as Exhibit "A" is a schedule of the mortgage(s) against the premises of which **MERS, AS NOMINEE FOR GREYSTONE BANK** is now the owner and holder. Also set forth on Exhibit "A" is the mortgage tax paid or to be paid in connection with each such mortgage.

3.        No re-loans or re-advances have been made under any of the above mortgage(s), and there is now due and owing on the same aggregate principal balance of $577,000.00.

4.        Exemption from further tax is claimed under Section 255, Article II, of the New York State Tax Law.

107-04 Jamaica Ave. Corp.

By: _____
Kumal Chetram, President

SEA·

Sworn to before me this
29th day of August, 2007

_____
Notary Public

JAIME JORDAN
Notary Public, State of New York
No. 01JO6079108
Qualified in Queens County
Commission Expires August 12, 20 L O

## EXHIBIT "A"

1.    Mortgage and Note secured thereby:

Mortgagor:                    107-04 Jamaica Ave. Corp.
Mortgagee:                    MERS, as Nominee for Greystone Bank
Original Balance:             $577,000.00
Dated:                        August 29, 2007
Recorded:                     to be recorded
Office:                       Register/Clerk of the County of Queens
Book and page:                to be recorded
Mortgage Tax Paid:            $ 16,156.00

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2009061600265001001E2155

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 4 |
|---|---|

**Document ID:** 2009061600265001   Document Date: 04-15-2009   Preparation Date: 06-16-2009
**Document Type:** ASSIGNMENT, MORTGAGE
Document Page Count: 2

| PRESENTER: | RETURN TO: |
|---|---|
| WEB TITLE AGENCY | WEB TITLE AGENCY |
| 69 CASCADE DRIVE | 69 CASCADE DRIVE |
| KNOWLTON BLDG., SUITE 202 | KNOWLTON BLDG., SUITE 202 |
| ROCHESTER, NY 14614 | ROCHESTER, NY 14614 |
| 585-454-4770 | 585-454-4770 |
| pboillat@webtitle.us  4090208 | pboillat@webtitle.us  4090208 |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 9297 | 79 | Entire Lot | 107-04 JAMAICA AVENUE |

Property Type: DWELLING ONLY - 1 FAMILY

**CROSS REFERENCE DATA**

CRFN: 2007000511550

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| GREYSTONE BANK | GREYSTONE BANK |
| 4700 FALLS OF NEUSE ROAD, SUITE 190 | 4700 FALLS OF NEUSE ROAD, SUITE 190 |
| RALIEGH, NC 27609 | RALEIGH, NC 27609 |

x  Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed          07-02-2009 11:49 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | 2009000202180 | | |
| Recording Fee: | $ | 47.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

*Annette M Hill*

*City Register Official Signature*

NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER



2009061600265001001C23D5

RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)        PAGE 2 OF 4

Document ID: 2009061600265001        Document Date: 04-15-2009        Preparation Date: 06-16-2009
Document Type: ASSIGNMENT, MORTGAGE

PARTIES
ASSIGNOR/OLD LENDER:
MERS
4700 FALLS OF NEUSE ROAD, SUITE 190
RALEIGH, NC 27609

## ASSIGNMENT OF MORTGAGE

KNOW THAT, EFFECTIVE AS OF October 9, 2007, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Nominee for Greystone Bank, 4700 Falls of Neuse Road, Suite 190, Raleigh, NC 27609, AS ASSIGNOR, IN CONSIDERATION OF TEN DOLLARS ($10.00) AND OTHER VALUABLE CONSIDERATION, PAID BY GREYSTONE BANK, whose address is 4700 Falls of Neuse Road, Suite 190, Raleigh, NC 27609, AS ASSIGNEE, HEREBY ASSIGNS UNTO THE ASSIGNEE, THE FOLLOWING MORTGAGE:

Mortgage dated August 29, 2007 in the original principal amount of $577,000.00 made by 107-04 Jamaica Ave. Corp. to Mortgage Electronic Registration Systems, Inc., as nominee for Greystone Bank, as Lender, affecting the real property known as 107-04 Jamaica Avenue, Richmond Hill, New York (the "Premises") and recorded in the office of the Office of the City Register October 9, 2007 in CRFN # 2007000511550; and the recording tax was paid thereon.

Said Premises known as 107-04 Jamaica Avenue, Richmond Hill, New York, designated on the City tax map as BLOCK 9297, LOT 79.

TOGETHER WITH THE BONDS OR NOTES OR OBLIGATIONS DESCRIBED IN SAID MORTGAGE, AND THE MONEYS DUE AND TO GROW DUE THEREON WITH INTEREST; TO HAVE AND TO HOLD THE SAME UNTO THE ASSIGNEE AND TO THE SUCCESSORS, LEGAL REPRESENTATIVES AND ASSIGNS OF THE ASSIGNEE FOREVER.

THIS ASSIGNMENT IS NOT SUBJECT TO THE REQUIREMENTS OF SECTION 275 OF THE REAL PROPERTY LAW BECAUSE THE ASSIGNEE NAMED IN THE ASSIGNMENT IS NOT ACTING AS A NOMINEE OF THE MORTGAGOR UNDER THE MORTGAGE AND THE MORTGAGE BEING ASSIGNED CONTINUES TO SECURE A BONA FIDE OBLIGATION.

THIS ASSIGNMENT IS MADE TO AND ACCEPTED BY THE ASSIGNEE WITHOUT ANY WARRANTY OR REPRESENTATION ON THE PART OF THE ASSIGNOR AND WITHOUT RECOURSE TO THE ASSIGNOR IN ANY EVENT WHATSOEVER. ASSIGNEE EXPRESSLY AGREES THAT IN ACCEPTING THIS ASSIGNMENT OF MORTGAGE ASSIGNEE HAS NOT RELIED ON ANY REPRESENTATION WHATSOEVER MADE BY ASSIGNOR.

THE WORD "ASSIGNOR" OR "ASSIGNEE" SHALL BE CONSTRUED AS IF IT READ "ASSIGNORS" OR "ASSIGNEES" WHENEVER THE SENSE OF THIS INSTRUMENT SO REQUIRES.

IN WITNESS WHEREOF, THE ASSIGNOR HAS DULY EXECUTED THIS
ASSIGNMENT OF MORTGAGE , EFFECTIVE AS OF THE DATE FIRST WRITTEN
ABOVE.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., as Nominee for Greystone Bank

By:

Name: Charles D Bryant

Title: SVP

Acknowledgment by a Person Outside New York State (RPL § 309-b)

STATE OF NORTH CAROLINA )
COUNTY OF _Wake_ ) ss.:
)

On the _15th_ day of APRIL, in the year 2009, before me, the undersigned,
personally appeared _Charles D. Bryant_ , personally known to me or proved to
me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are)
subscribed to the within instrument and acknowledged to me that they executed the same in
their capacity(ies), and that by their signature(s) on the instrument, the individual(s), or the
person upon behalf of which the individual(s) acted, executed the instrument, and that such
individual(s) made such appearance before the undersigned in Raleigh, North Carolina.

Notary Public

JEANNA W. BROOKS
NOTARY PUBLIC
WAKE COUNTY, N.C.
My Commission Expires 4-28-2012.

SEAL

409020

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2011111400167001001E1973

## RECORDING AND ENDORSEMENT COVER PAGE          PAGE 1 OF 3

| | | |
|---|---|---|
| Document ID: 2011111400167001 | Document Date: 12-10-2010 | Preparation Date: 11-14-2011 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 2 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| HOME ABSTRACT CORP. (PICK UP REJECTIONS) | POLSINELLI SHUGHART, PC |
| AS AGENT FOR STEWART TITLE INSURANCE CO. | KIMBERLEE VERVOORT |
| 8225 THIRD AVENUE HAC11-06-0879 | 700 WEST 47TH STREET, STE 1000 |
| BROOKLYN, NY 11209 | KANSAS CITY, MO 64112 |
| 718-680-4663 | |
| info@homeabstractcorp.com | |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| QUEENS | 9297 | 79 | Entire Lot | | 107-04 JAMAICA AVENUE |

Property Type: 1-3 FAMILY WITH STORE / OFFICE

### CROSS REFERENCE DATA

CRFN: 2007000511550

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| GREYSTONE BANK | WALLS FARGO BANK, NA., AS TRUSTEE |
| 4700 FALLS OF NEUSE ROAD | C/O KEYSTONE REAL ESTATE CAPITAL MARKETS, |
| RALEIGH, NC 27609 | 11501 OUTLOOK STREET, STE 300 |
| | OVERLAND PARK, KS 66211 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | RECORDED OR FILED IN THE OFFICE | | |
| TASF: | $ | 0.00 | OF THE CITY REGISTER OF THE | | |
| MTA: | $ | 0.00 | CITY OF NEW YORK | | |
| NYCTA: | $ | 0.00 | Recorded/Filed    11-25-2011 16:08 | | |
| Additional MRT: | $ | 0.00 | City Register File No (CRFN): | | |
| TOTAL: | $ | 0.00 | 2011000411650 | | |
| Recording Fee: | $ | 47.00 | | | |
| Affidavit Fee: | $ | 0.00 | *Jannette M Hill* | | |
| | | | City Register Official Signature | | |

## ASSIGNMENT OF MORTGAGE

**KNOW THAT, GREYSTONE BANK**, a North Carolina state charted bank having an office located at 4700 Falls of Neuse Road, Raleigh, North Carolina, 27609 ("Assignor"), in consideration of Ten Dollars ($10.00), paid by Wells Fargo Bank, N.A., as trustee for the holders of Waterfall Victoria Mortgage Trust 2011-SBC2, *
("Assignee"), hereby assigns unto the Assignee, its successors and assigns, that certain Mortgage dated August 29, 2007, made by 107-04 Jamaica Ave. Corp. to Greystone Bank in the principal sum of $577,000.00 and recorded in the office of the City Register, Queens County, New York on October 9, 2007 as Document Number 2007000511550.

**TOGETHER** with the bonds or notes or obligations described in said mortgage(s), and the moneys due and to grow due thereon with the interest; **TO HAVE AND TO HOLD** the same unto the Assignee and to the successors, legal representatives and assigns of the Assignee forever.

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because the mortgage(s) being assigned to the Assignee hereunder continues to secure a bona fide obligation and the Assignee is not acting as a nominee of the mortgagor described in the said mortgages.

**IN WITNESS WHEREOF**, the Assignor has duly executed this assignment the _10ᵗʰ_ day of
_December_ , 2010 .

ASSIGNOR:

GREYSTONE BANK

By: _____
Name:  Colon Terrell
Title:   President

* Mortgage-Backed Certificates, Series 2011-SBC2, having an office at
c/o KeyCorp Real Estate Capital Markets, Inc., 11501 Outlook Street,
Suite 300, Overland Park, Kansas 66211

Queens County
Block 9287
Lot 79

ACKNOWLEDGEMENT:

State of North Carolina , County or Wake , ss

On the 10th day of December in the year 2010 before me, the undersigned, personally appeared COLON TERRELL personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Jeanna W Brooks
Notary Public

JEANNA W. BROOKS
NOTARY PUBLIC
WAKE COUNTY, N.C.

My Commission Expires 4-26-2012.

SEAL

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2011111400167002002EE937

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 2 |
|---|---|

Document ID: 2011111400167002     Document Date: 12-10-2010     Preparation Date: 11-14-2011
Document Type: ASGN OF ASGN OF L&R
Document Page Count: 1

| PRESENTER: | RETURN TO: |
|---|---|
| HOME ABSTRACT CORP. (PICK UP REJECTIONS) AS AGENT FOR STEWART TITLE INSURANCE CO. 8225 THIRD AVENUE HAC11-06-0879 BROOKLYN, NY 11209 718-680-4663 info@homeabstractcorp.com | POLSINELLI SHUGHART, PC KIMBERLEE VERVOORT 700 WEST 47TH STREET, STE 1000 KANSAS CITY, MO 64112 |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| QUEENS | 9297 | 79 | Entire Lot | | 107-04 JAMAICA AVENUE |

Property Type: 1-3 FAMILY WITH STORE / OFFICE

**CROSS REFERENCE DATA**

CRFN: 2007000511551

**PARTIES**

| ASSIGNOR: | ASSIGNEE: |
|---|---|
| GREYSTONE BANK 4700 FALLS OF NEUSE ROAD RALEIGH, NC 27609 | WALLS FARGO BANK, NA., AS TRUSTEE C/O KEYSTONE REAL ESTATE CAPITAL MARKETS, 11501 OUTLOOK STREET, STE 300 OVERLAND PARK, KS 66211 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 42.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed    11-25-2011 16:08
City Register File No.(CRFN):
      2011000411651

*Annette M Hill*

*City Register Official Signature*

## ASSIGNMENT

KNOW THAT, **GREYSTONE BANK**, a North Carolina state charted bank having an office located at 4700 Falls of Neuse Road, Raleigh, North Carolina, 27609 ("Assignor"), in consideration of Ten Dollars ($10,00), paid by Wells Fargo Bank, N.A. as trustee for the holders of Waterfall Victoria Mortgage Trust 2011-SBC2, * ("Assignee"), hereby assigns unto the Assignee, its successors and assigns, all of Assignors right title and interest in, to and under that certain Assignment of Leases and Rents, dated August 29, 2007, made by 107-04 Jamaica Ave. Corp., as assignor, in favor of Greystone Bank and recorded in the office of the City Register, Queens County, New York, on October 9, 2007 as Document Number 2007000511551.

**TO HAVE AND TO HOLD** the same unto the Assignee and its successors and assigns forever.

**IN WITNESS WHEREOF**, the Assignor has duly executed this assignment the _10TH_ day of _December_ , 2010 .

### ASSIGNOR:

### GREYSTONE BANK

By: _____

Name: Colon Terrell

Title:  President

\* Mortgage-Backed Certificates, Series 2011-SBC2, having an office at c/o KeyCorp Real Estate Capital Markets, Inc., 11501 Outlook Street, Suite 300, Overland Park, Kansas 66211

ACKNOWLEDGEMENT:

State of _North Carolina_ , County of _Wake_ , ss

On the _10th_ day of _December_ in the year _2010_ before me, the undersigned, personally appeared COLON TERRELL, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

SEAL

Queens County
Block 8287
Lot 78



M. Kathryn Pruett
(816) 360-4357
(816) 572-5357 Direct Fax
mpruett@polsinelli.com

700 West 47th Street, Suite 1000
Kansas City, MO 64112
(816) 753-1000
Fax: (816) 753-1536
www.polsinelli.com

April 26, 2011

**FEDERAL EXPRESS**
**CERTIFIED MAIL/RETURN RECEIPT**

Mr. Kumal Chetram
107-04 Jamaica Avenue
Richmond Hill, New York 11418

Mr. Kumal Chetram
450 Northend Avenue 24F
New York, New York 10285

107-04 Jamaica Ave. Corp.
107-04 Jamaica Avenue
Richmond Hill, New York 11418

> **Re: Promissory Note dated August 29, 2007**
> **In Original Principal Amount of $577,000.00**

Ladies and Gentlemen:

This Firm is counsel to Wells Fargo Bank, N.A., as trustee for the registered holders of Waterfall Victoria Mortgage Trust 2011-SBC2 Mortgage-Backed Certificates, Series 2011-SBC2 (**"Lender"**). 107-04 Jamaica Ave. Corp. (**"Borrower"**) is the maker of a certain Mortgage Note (the **"Note"**), dated August 29, 2007, in the original principal amount of $577,000.00. In addition, Borrower is signatory to a certain Mortgage, Guarantee of Compliance, Hazardous Substances Indemnity Agreement, Notice of Assignment, Sale or Transfer of Servicing Rights (the **"Security Instrument"**), dated August 29, 2007, under which Borrower is the mortgagor of property located at 107-04 Jamaica Avenue in Richmond Hill, New York. Lender is the current holder and owner of the Note, the Security Instrument, and all other documents further evidencing, securing, or executed in connection with the indebtedness owed under the Note (collectively, the **"Loan Documents"**).

Under the Loan Documents, Borrower is obligated to make payments of debt service and other amounts on a monthly basis. Borrower has failed to make payment in the amounts as and when called for under the Note and other Loan Documents for the months of March and April 2011. You are hereby provided formal notice of Borrower's defaults under the Loan Documents for its failure to make such payments, and demand is made for cure of the same on or before **Monday, May 9, 2011**.

Kansas City   St. Louis   Chicago   Denver   Phoenix   Washington, DC   New York   Wilmington, DE



Polsinelli
 Shughart.

107-04 Jamaica Ave. Corp.
April 26, 2011
Page 2


In addition, as a result of Borrower's failure to pay debt service as and when required for the months of March and April 2011, Borrower has incurred late charges, default interest has accrued and is accruing, and Lender has incurred fees and costs, including attorneys' fees, to enforce the terms of the Loan Documents. Lender hereby demands that Borrower pay all late charges, default interest, and fees and costs, including attorneys' fees incurred by Lender, on or before **Monday, May 9, 2011**.

As of the date of this letter, the amounts necessary to cure the above-referenced defaults, pay outstanding late charges and default interest, and reimburse Lender for fees and costs incurred by Lender are as follows: the March 2011 payment in the amount of $4133.70; the April 2011 payment in the amount of $4133.70; late charges in the amount of $620.07; default interest in the amount of $4339.64; and fees and costs, including attorneys' fees, in the amount of $894.00. The sum of these amounts is $14,121.11, and such amount is subject to increase as default interest, late charges, and fees and costs, including attorneys' fees, continue to accrue.

If Borrower's defaults are not cured as demanded herein, Borrower will continue to be in default and Lender may pursue any and all available rights and remedies under the Loan Documents or at law or in equity, without further notice or demand. Such rights and remedies include but are not limited to acceleration of all indebtedness due under the Loan Documents, the appointment of a receiver at the property that is subject to the Security Instrument, the direct collection of all rents, income, and profits arising from the operation of such property, and foreclosure of such property and of any other property that secures the indebtedness owed under the Loan Documents.

Any partial payment made by Borrower or acceptance of any partial payment by Lender or any of its representatives or loan servicing agents of any amount that is not sufficient to cure as required herein or that is not sufficient to satisfy any future obligation under the Loan Documents (or which is made subsequent to any acceleration by Lender hereafter) is not intended, and shall not be deemed, to constitute a waiver of Lender's rights, remedies, or recourse under the Loan Documents or at law or in equity. Any application of any such payment is not intended, and shall not be deemed, to be a modification, rearrangement, reinstatement, or extension of the existing Loan Documents. Any such payment shall be applied in such order as Lender may elect in its sole discretion, without any waiver by Lender of its right to pursue any of its rights and remedies under the Loan Documents or at law or in equity.

Any past or future negotiation between you or your representatives or agents on the one hand and Lender and its representatives or agents on the other do not and shall not constitute a waiver of Lender's right to exercise its rights and remedies under the Loan Documents or at law or in equity. Any alleged waiver of any of Lender's rights shall not be effective unless in writing duly executed by an authorized representative of Lender.



M. Kathryn Pruett
(816) 360-4357
(816) 572-5357 Direct Fax
mpruett@polsinelli.com

700 West 47th Street, Suite 1000
Kansas City, MO 64112
(816) 753-1000
Fax: (816) 753-1536
www.polsinelli.com

June 23, 2011

**FEDERAL EXPRESS**
**CERTIFIED MAIL / RETURN RECEIPT**

Mr. Kumal Chetram                    Mr. Kumal Chetram
107-04 Jamaica Avenue                450 Northend Avenue, 24F
Richmond Hill, New York 11418        New York, New York 10285

107-04 Jamaica Ave. Corp.
107-04 Jamaica Avenue
Richmond Hill, New York 11418

> Re:    **Promissory Note dated August 29, 2007**
>        **In Original Principal Amount of $577,000.00**

Ladies and Gentlemen:

This Firm is counsel to Wells Fargo Bank, N.A., as trustee for the registered holders of Waterfall Victoria Mortgage Trust 2011-SBC2 Mortgage-Backed Certificates, Series 2011-SBC2 ("**Lender**"). 107-04 Jamaica Ave. Corp. ("**Borrower**") is the maker of a certain Mortgage Note (the "**Note**"), dated August 29, 2007, in the original principal amount of $577,000.00. In addition, Borrower is signatory to a certain Mortgage, Guarantee of Compliance, Hazardous Substances Indemnity Agreement, Notice of Assignment, Sale or Transfer of Servicing Rights (the "**Security Instrument**"), dated August 29, 2007, under which Borrower is the mortgagor of property located at 107-04 Jamaica Avenue in Richmond Hill, New York. Lender is the current holder and owner of the Note, the Security Instrument, and all other documents further evidencing, securing, or executed in connection with the indebtedness owed under the Note (collectively, the "**Loan Documents**").

In a letter dated April 26, 2011 (the "**Default Letter**"), Lender notified Borrower of its defaults under the Loan Documents for Borrower's failure to make payments of debt service for the months of March and April 2011. Borrower has failed to cure the defaults referenced in the Default Letter. In addition, Borrower has failed to make payment in the amounts called for under the Note and other Loan Documents for the months of May and June 2011. Accordingly, an additional default has occurred under the Loan Documents since delivery of the Default Letter.

Kansas City   St. Louis   Chicago   Denver   Phoenix   Washington, DC   New York   Wilmington, DE

2015584.1

Polsinelli
Shughart.

Mr. Kumal Chetram
June 23, 2011
Page 2

        This letter constitutes formal notice to you of Lender's <u>acceleration</u> of the indebtedness
owed under the Note and other Loan Documents. In addition, Borrower's license under the Loan
Documents to receive, collect, and make use of rents, profits, and income of any other type (the
"Rents") is hereby <u>revoked</u>, and all such Rents are now the property of Lender. Any such Rents,
whether now in the possession of, or hereafter coming into the possession of, Borrower, any of
its agents, or any of its contractors, including any property manager engaged by Borrower, shall
be delivered immediately to Lender at the following address:

                        KeyBank Real Estate Capital
                        11501 Outlook, Suite 300
                        Overland Park, KS 66211
                        Attention: Kevin D. Hogg

Until such delivery, you shall hold the Rents in trust for the benefit of Lender. The revocation of
Borrower's license to collect and make use of the Rents shall remain in full force and effect until
such time as Lender and Borrower otherwise agree in a signed writing.

        You are again reminded that any partial payment made by Borrower or acceptance of any
partial payment by Lender, or any of its representatives or loan servicing agents, of any amount
that is not sufficient to satisfy in full Borrower's obligations under the Loan Documents is not
intended, and shall not be deemed, to constitute a waiver of Lender's rights, remedies, or
recourse under the Loan Documents or at law or in equity. Any application of any such payment
is not intended, and shall not be deemed, to be a modification, rearrangement, reinstatement, or
extension of the existing Loan Documents. Any such payment shall be applied in such order as
Lender may elect in its sole discretion, without any waiver by Lender of its right to pursue any of
its rights and remedies under the Loan Documents or at law or in equity.

        Lender, or Lender's servicer or other agents, may generate, from time to time, automated
billing statements or other statements that are forwarded to Borrower or to other persons or
entities on a monthly or other periodic basis. The forwarding to you of any billing statement
from this time forward, including any billing statement that purports to state amounts due and
owing by Borrower that are different from the accelerated indebtedness owed, may not be relied
upon by Borrower, does not act to de-accelerate or reinstate the debt in any manner, and does not
result in any waiver of Lender's rights as set forth herein, all of which are reserved in their
entirety.

2015584.1

Polsinelli
Shughart.

Mr. Kumal Chetram
June 23, 2011
Page 3

Any past or future negotiation between you or your representatives or agents on the one hand and Lender and its representatives or agents on the other do not and shall not constitute a waiver of Lender's right to exercise its rights and remedies under the Loan Documents or at law or in equity. Any alleged waiver of any of Lender's rights shall not be effective unless in writing duly executed by an authorized representative of Lender. Neither Borrower nor any other obligor for the indebtedness owed under the Loan Documents shall be entitled to rely upon any oral statements made or purported to be made by or on behalf of Lender or its agents in connection with any alleged agreement by or on behalf of Lender to refrain from exercising any of Lender's rights under the Loan Documents or otherwise at law or in equity.

Nothing set forth herein is intended, and shall not be deemed, to modify, limit, release, reduce, or waive any of Lender's rights, remedies, or privileges under the Loan Documents, or at law or in equity, all of which are hereby specifically reserved. Furthermore, the enumeration of any specific default herein is not intended and shall not be deemed to waive other defaults that may currently exist under the Loan Documents.

Sincerely,

M. Kathryn Pruett

MKP:

cc:    Via Electronic Mail

       Kevin D. Hogg
       kevin_d_hogg@keybank.com

       Brett D. Anders
       banders@polsinelli.com

2015554.1